*Decision will be entered for the petitioner.*

UNITED BUSINESS CORPORATION OF AMERICA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 32742. Promulgated September 25, 1935.

*James P. Quigley*, *Esq.*, and *Robert J. Heberle*, *Esq.*, for the petitioner.

*Harold Allen*, *Esq.*, and *R. H. Transue*, *Esq.*, for the respondent.

OPINION.

VAN FOSSAN: This proceeding seeks redetermination of income tax deficiencies in the amounts of $15,399.97 and $38,657.74 for the calendar years 1922 and 1923, respectively.

The asserted deficiencies include the additional tax at 25 percent of petitioner's net income for each of those years, assessed by re-

spondent pursuant to his certification that in his opinion petitioner's accumulation of gains and profits and additions to surplus for 1922 and 1923 were unreasonable for the purposes of its business and his determination that such unreasonable accumulations of profits were for the purpose of preventing the imposition of surtaxes upon petitioner's stockholders, within the ambit of section 220 of the Revenue Act of 1921.[1]

Petitioner having waived its assignment of error involving a claimed deduction for alleged obsolescence of buildings and equipment, the sole issue is whether, for the years 1922 and 1923, petitioner is subject to the additional tax at 25 percent under section 220, *supra*, as determined by the respondent.

A portion of the facts were stipulated, including numerous schedules of figures and other exhibits. Such stipulation is included herein by reference. Also, a portion of the facts were adduced by testimony. A brief resume of the facts will suffice.

Petitioner is a Washington state corporation with its principal office at Syracuse, New York. It has an authorized capital stock of $6,000,000, divided into 60,000 shares of common stock of the par value of $100 each. Petitioner was organized on or about April 1, 1920, by Burns Lyman Smith and his advisors, for the purpose of transferring to it certain properties owned by Smith, particularly his large real estate holdings in Seattle, so that in the event of an emergency he would be able to sell a portion of his stock more readily than an interest in his real estate, consisting of large office buildings, and, further, so that in the event of his death the stock of the petitioner corporation could be more readily distributed among his heirs, including two minor children. The corporation was authorized to purchase, sell, and deal in real and personal property and to borrow

[1] Sec. 220. That if any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its stockholders or members through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 25 per centum of the amount thereof, which shall be in addition to the tax imposed by section 230 of this title and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax: *Provided*, That if all the stockholders or members of such corporation agree thereto, the Commissioner may, in lieu of all income, war-profits and excess-profits taxes imposed upon the corporation for the taxable year, tax the stockholders or members of such corporation upon their distributive shares in the net income of the corporation for the taxable year in the same manner as provided in subdivision (a) of section 218 in the case of members of a partnership. The fact that any corporation is a mere holding company, or that the gains and profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax; but the fact that the gains and profits are in any case permitted to accumulate and become surplus shall not be construed as evidence of a purpose to escape the tax in such case unless the Commissioner certifies that in his opinion such accumulation is unreasonable for the purposes of the business. When requested by the Commissioner, or any collector, every corporation shall forward to him a correct statement of such gains and profits and the names and addresses of the individuals or shareholders who would be entitled to the same if divided or distributed, and of the amounts that would be payable to each.

and lend money. All of its issued capital stock has been held by Smith, except for three qualifying shares.

In 1910 Smith inherited real and personal properties, of great value, from his father, and in 1920 he inherited additional similar properties from his mother. During the period April 1, 1920, to December 31, 1923, he paid into or transferred to the corporation cash, land, buildings, stocks, bonds, and securities, and received therefor the corporation's capital stock and/or credits to his personal account as follows:

| Properties transferred by Smith to petitioner | Amount entered on books | Shares of stock issued to Smith $100 par value | Credited to surplus | Credited to Smith's personal account |
|---|---|---|---|---|
| **1920** | | | | |
| Land, two office buildings, equipment (subject to $700,000 mortgage) net equity | $1,947,527.89 | 19,475 | $27.89 | ----------- |
| Cash | 1,312.58 | 13 | 12.58 | ----------- |
| Securities | 449,075.00 | 4,490 | 75.00 | ----------- |
| **1921** | | | | |
| Cash | 25,000.00 | 250 | ----------- | ----------- |
| Securities | 390,667.00 | 3,903 | 367.00 | ----------- |
| **1922** | | | | |
| Securities | 860,072.56 | 5,862 | ----------- | $273,872.56 |
| **1923** | | | | |
| One-half interest in two office buildings | 117,500.00 | 1,175 | ----------- | ----------- |
| Securities | 203,770.00 | 2,037 | ----------- | 70.00 |
| Total | 3,994,925.03 | 37,205 | 482.47 | 273,942.56 |

All of the securities paid into or transferred to the corporation consisted of shares of stock of numerous domestic corporations, except for five different issues of bonds having a total face value of $10,700.

The corporation's balance sheets disclose the following:

| | Apr. 1, 1920 | Dec. 31, 1920 | Dec. 31, 1921 | Dec. 31, 1922 | Dec. 31, 1923 |
|---|---|---|---|---|---|
| *Assets* | | | | | |
| Cash | $912.58 | $3,622.39 | $31,349.51 | $43,613.95 | $41,098.78 |
| Notes receivable | ----------- | 232,625.00 | 345,637.17 | 515,288.84 | 648,688.84 |
| Accounts receivable | ----------- | 4,512.17 | 286,305.74 | 6,818.02 | 213,653.58 |
| Stocks and bonds | ----------- | 466,369.28 | 885,612.85 | 1,629,183.04 | 1,894,963.12 |
| Land | 603,473.00 | 603,473.00 | 603,473.00 | 662,223.00 | 662,223.00 |
| Buildings | 1,674,763.72 | 1,674,763.72 | 1,676,408.22 | 1,735,158.22 | 1,735,158.22 |
| Equipment | 369,291.17 | 372,011.02 | 384,848.32 | 384,848.32 | 384,848.32 |
| Restaurant equipment | ----------- | ----------- | ----------- | ----------- | 23,247.78 |
| Law library | 484.56 | 144.26 | 54.26 | 46.76 | 46.76 |
| Total | 2,648,925.03 | 3,358,020.84 | 4,213,689.07 | 4,977,180.15 | 5,603,928.40 |
| *Liabilities and capital* | | | | | |
| Notes payable | ----------- | 165,000.00 | 456,651.86 | 345,327.00 | 471,906.64 |
| Accounts payable | 484.56 | 13,073.13 | 5,312.09 | 102,831.45 | ----------- |
| Mortgages payable | 700,000.00 | 650,000.00 | 600,000.00 | 600,000.00 | 550,000.00 |
| Reserve for depreciation | ----------- | 53,832.16 | 126,402.69 | 201,198.24 | 277,314.47 |
| Capital stock | 1,948,400.00 | 2,397,800.00 | 2,813,100.00 | 3,399,300.00 | 3,720,500.00 |
| Surplus | 40.47 | 78,315.55 | 212,222.43 | 328,523.46 | 584,207.29 |
| Total | 2,648,925.03 | 3,358,020.84 | 4,213,689.07 | 4,977,180.15 | 5,603,928.40 |

Of the corporation's notes payable, the amounts of $189,000 for 1921, $115,090 for 1922, and $110,169.64 for 1923 represent those made payable to Smith, who discounted them at various banks and paid the proceeds over to the corporation. Also, of the corporation's notes payable, the amounts of $50,000 for 1921, $103,500 for 1922, and $50,000 for 1923 represent notes payable to various banks, and endorsed by Smith, but none of such notes were in default.

The corporation's books and records further disclose the following:

| | Apr. to Dec. 1920 | 1921 | 1922 | 1923 |
|---|---|---|---|---|
| Taxable net income | $72,042.28 | $76,659.38 | $54,248.59 | $149,539.05 |
| Nontaxable corporation dividends received | 8,040.00 | 57,490.50 | 70,047.50 | 109,492.53 |
| Loans by corporation to Smith, unpaid end of year | 236,137.17 | 599,394.90 | 452,788.84 | 774,624.40 |
| Debts of corporation to Smith in open account | 484.56 | | 102,831.45 | |

No salary was paid to Smith by the corporation during 1920 to 1923, inclusive.

No dividends were declared by petitioner during any of the years 1920 to 1923, inclusive. A 3 percent dividend was declared for each of the years 1924 and 1925.

From April 1, 1920, to the close of the year 1923, the following payments were made by Smith on account of his demand notes given to the corporation:

| Date of notes | Principal | Interest | Total payment | Date of payment |
|---|---|---|---|---|
| Oct. 14, 1920 | $4,500 | $812.25 | $5,312.25 | Oct. 18, 1923 |
| Apr. 13, 1921 | 2,000 | 304.33 | 2,304.33 | Oct. 18, 1923 |
| May 17, 1921 | 1,500 | 241.50 | 1,741.50 | Oct. 18, 1923 |

During the years 1922 and 1923 Smith was worth approximately three quarters of a million dollars in addition to his interest in the corporation, and had the financial ability to meet his obligations to the corporation.

For each of the years 1917 to 1923, inclusive, Smith, as an individual, sustained a net loss (exclusive of dividends received), received dividends, had taxable income or loss, and paid taxes, as follows:

| Year | Net loss exclusive of dividends received | Dividends received | Taxable income or (loss) | Total tax paid |
|---|---|---|---|---|
| 1917 | ($117,236.70) | [1] $82,545.30 | ($34,691.40) | $481.20 (excess profits tax). |
| 1918 | (63,664.14) | 87,466.36 | 23,802.22 | 1,067.22 (surtax). |
| 1919 | (92,183.70) | 81,580.75 | (10,602.95) | None. |
| 1920 | (32,175.93) | 70,876.75 | 38,700.82 | 3,173.15 (surtax). |
| 1921 | (5,562.94) | 3,474.00 | (2,088.94) | None. |
| 1922 | (7,673.78) | 448.00 | (7,225.78) | None. |
| 1923 | (3,204.85) | 2,657.25 | (547.60) | None. |

[1] In addition thereto, Smith received dividends of $40,824.16 in 1917, but earned in 1916.

Petitioner contends that its large annual additions to surplus were for the purpose of building up that account or fund to an amount equal to the outstanding mortgage, so as to insure itself a strong financial position. Such mortgage represented a $700,000 encumbrance in 1920 on the office buildings (in which the corporation had a net equity of approximately $2,000,000) paid in by Smith for stock in that year. The mortgage was for a long term and called for annual curtailments of $50,000. The record reveals no necessity for building up a surplus equal to the principal amount of the outstanding long term mortgage. Nor does the record substantiate the alleged *purpose* underlying the large annual additions to surplus. In our opinion it establishes the very purpose proscribed by the statute. While increasing its surplus beyond its ordinary business needs, by failing to declare dividends, the corporation was increasing greatly its liabilities in notes payable, apparently by borrowing from banks to make loans to Smith, the corporation's sole stockholder. Smith had the use of the corporation's funds in an amount greatly in excess of its surplus from 1920 to 1923, inclusive, and, so far as the record discloses, made no payments of interest thereon except for the very small amount paid in 1923, as shown above. Thus it can not be contended that the corporation's loans to Smith constituted real investments by the former.

Furthermore, the corporation received as nontaxable income large amounts in dividends on domestic corporation stocks which had been paid in or transferred to it by Smith, who prior thereto had received the dividends on such stocks, as taxable income.

We conclude that the respondent was correct in holding that the petitioner corporation was availed of during 1922 and 1923 for the purpose of preventing the imposition of the surtax upon its stockholders by permitting its gains and profits to accumulate beyond the reasonable needs of its business, instead of distributing them. Cf. *United Business Corporation of America*, 19 B. T. A. 809; affd., 62 Fed. (2d) 754; certiorari denied, 290 U. S. 635, wherein the Board had before it the same question as to the taxable year 1921 and the basic facts and circumstances therein closely parallel those in this proceeding.

The respondent's contention that such prior decision, involving this same taxpayer, is *res judicata*, as to the present proceeding, is without merit. The application of section 220, *supra*, in any particular taxable year is wholly dependent upon whether the facts and circumstances pertaining to that year bring the taxpayer within the scope of that section—that is, was the corporation *availed* of for the prohibited purpose during the taxable year in question, irrespective of a finding by the Board and the courts that it was so availed of in

a prior taxable year. We do not deem it necessary to enter into a discussion of the principle of *rès judicata*, when clearly such principle is not applicable here.

Petitioner contends that the presumption of correctness, ordinarily attaching to the respondent's determination of a deficiency in income tax liability, is not available to respondent and that, moreover, since this proceeding involves not an ordinary deficiency, but an additional tax imposed by section 220, *supra*, in the nature of a penalty, the burden of proof rests on respondent. These contentions, raised on brief, have not been properly pleaded so as to raise issues of law calling for the Board's decision thereon. However, the Board's determination of the sole issue, namely, whether petitioner is subject to the additional tax imposed by section 220, *supra*, is not based on the failure of petitioner's proof to overcome the presumption of correctness of respondent's determination, but is an affirmative finding upon careful consideration of all the evidence of record.

Reviewed by the Board.

*Decision will be entered for the respondent.*

