R. & L., Incorporated, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 68118. Promulgated December 31, 1935.

*S. L. Herold, Esq.*, and *S. P. Cousin, Esq.*, for the petitioner.
*DeWitt M. Evans, Esq.*, and *F. B. Schlosser, Esq.*, for the respondent.

OPINION.

LEECH: Respondent determined that petitioner was formed or availed of during 1929 for the purpose of preventing the imposition of the surtax upon its shareholders by permitting its gains and profits to accumulate instead of being distributed. Pursuant thereto, by authority of section 104 (a), Revenue Act of 1928, he determined a tax of 50 percent upon petitioner's net income for 1929, which resulted in a deficiency of $66,990.45 in that year's income taxes. Petitioner challenges the correctness of that determination. Alternatively, petitioner alleges that respondent erred in including $61,847.61 in income, as commissions earned on the booking of films; and, also, it contends that section 104 is unconstitutional.

E. V. Richards organized the petitioner on March 3, 1927, under the laws of Louisiana, to take over and hold substantially all of his personal properties and investments, in order to avoid certain possible difficulties in the administration of his estate, in the event of his death before his seven minor children attained majority. He turned over the following properties to the petitioner:

| | |
|---|---:|
| Certificates of deposit | $70,000.00 |
| Notes receivable | 12,980.00 |
| Land | 22,397.50 |
| Buildings | 60,167.00 |
| Liberty bonds | 30,450.00 |
| Shreveport Mutual Building & Loan Assn. stock | 45,300.00 |
| Whitney National Bank stock | 17,180.00 |
| Saenger Theatres, Inc., stock | 234,079.00 |
| Hibernia Homestead stock | 5,000.00 |
| Equitable Homestead stock | 5,000.00 |
| Metro-Goldwyn-Mayer Corporation stock | 10,125.00 |
| Standard Fruit & Steamship Co. stock | 5,000.00 |
| Huyler's Corporation | 4,621.50 |
| Penick & Ford bonds | 8,000.00 |
| Carondelet Building, Inc., bonds | 15,000.00 |
| Furniture, Texarkana | 10,000.00 |
| | 555,300.00 |

For these properties, the petitioner issued $555,300 par value of its capital stock, which, except for directors' qualifying shares, was divided equally between Richards and his wife. It appears that the only properties that Richards retained were $16,000 in cash, some shares in Saenger Theatres, Inc., and certain agency contracts with Metro-Goldwyn-Mayer, under which he rendered film-booking services on a commission basis.

At the time petitioner was organized, Richards agreed " to turn over the earnings and commissions of the Metro-Goldwyn Corporation to the R. & L. Inc. for services rendered to them for a period of five years." After organization, petitioner conducted Richards' film-booking agency for him, and Richards turned over to it all of the commissions derived therefrom. In 1929, these commissions amounted to $61,847.61. Petitioner reported that amount in its return, as other income, and the respondent left it there.

Sometime after organization but before the end of 1928, petitioner acquired shares in four corporations, which operated approximately 25 motion picture theatres in suburban New Orleans. The affairs of these corporations were managed by Richards, who was petitioner's president, and other officers of the petitioner.

During the years 1927 to 1929, inclusive, Richards was also employed as president of Saenger Theatres, Inc., at a salary of $66,000 per annum. As payments of this salary were received by him, he turned them over to the petitioner, and the latter gave him credit therefor, on its books, defrayed all of his family expenses, and retained the balance in its treasury. On this account, petitioner was indebted to Richards at the close of the aforesaid years, in the respective approximate amounts of $3,000, $19,000, and $36,000. At no time during these years did the petitioner make any loans to Richards.

Petitioner had net earnings of $62,156.95 in 1927, $88,905.05 in 1928, and $120,325.48 in 1929. It did not declare or distribute any dividends in these years. In 1929, its income, all of which was received in cash, included interest on corporation bonds, $715; rents, $26,699.96; profit from the sale of real estate, $35,650; dividends on stocks of domestic corporations, $42,090; and compensation for services rendered to Richards in connection with his film-booking business, $61,847.67, a total of $167,002.63; and its expenses, including $17,000 for depreciation and $9,750 for " replacements and renewals ", amounted to $46,677.15.

In 1928, petitioner purchased a motion picture theater building, at a cost of " a couple of hundred thousand dollars ", all but about $50,000 of which was paid in that year. The remainder of $50,000 was paid in 1929. The record does not disclose the use to which the building was put. Apparently the petitioner itself did not operate

any motion picture theaters in 1929, for it had no income from that source.

The following are petitioner's balance sheets as of the beginning and the end of 1929:

| | Beginning of 1929 | End of 1929 |
|---|---|---|
| ASSETS | | |
| Cash | | $2, 110. 97 |
| Notes receivable | $80. 00 | |
| Stocks of domestic corporations | 968, 589. 99 | 1, 034, 374. 22 |
| Bonds of domestic corporations | | 10, 000 00 |
| Land | 362, 447. 50 | 361, 113. 91 |
| Buildings | 293, 437. 33 | 274, 911. 43 |
| Furniture and fixtures | 10, 000. 00 | |
| Value of life insurance | | 740. 00 |
| | 1, 634, 554. 82 | 1, 683, 214. 53 |
| Less: Reserve for depreciation | 20, 900. 00 | 34, 000. 00 |
| Total assets | 1, 613, 654. 82 | 1, 649, 214. 53 |
| LIABILITIES | | |
| Notes payable | $128, 822. 65 | $148, 440. 45 |
| Accounts payable | 51, 156. 90 | |
| Mortgages | 56, 666. 67 | |
| Common stock | 555, 300. 00 | 555, 300. 00 |
| Surplus and undivided profits | 821, 708. 60 | 942, 034. 08 |
| Total liabilities | 1, 613, 654. 82 | 1, 649, 214. 53 |

The record does not disclose how the surplus and undivided profits reached the proportions indicated by these balance sheets. The petitioner's total net earnings to the end of 1929 amounted to $271,387.48. Apparently $670,646.60 is donated surplus. The 1929 return shows $3,440 donated in that year, in the form of stocks.

Included in the asset "Stocks of domestic corporations, $1,034,-374.22", as of the end of 1929, is the entire capital stock of the Rochelle Investment Corporation, which petitioner acquired in July or August 1929, in exchange for its shares in the Saenger Theatres, Inc. The assets of the Rochelle Investment Corporation consisted of 20,233 shares of Paramount Publix Corporation, which it acquired at $68 per share. The quoted market prices of these shares on November 3 and December 31, 1929, on the New York Stock Exchange, were $39 and $48 per share, respectively. There was a relatively proportional decline in all of the stocks of the domestic corporations owned by petitioner, following the stock market crash in October 1929.

The stocks of domestic corporations which petitioner owned at the end of 1929 are as follows:

| Name of corporation | Shares owned | Name of corporation | Shares owned |
|---|---|---|---|
| Paramount-Publix Corporation | [1] 2, 357 | United Enterprises | 125 |
| Fox Film Corporation | [1] 500 | Whitney National Bank | [1] 220 |
| Fox Theaters Corporation | [1] 200 | Standard Fruit & Steamship Co | [1] 150 |
| Rochelle Investment Corporation | 2, 500 | Curtis Airport Company | [1] 68 |
| Arcade Amusement Company | 150 | Gusher Bill Oil Company | 1, 000 |
| Sobel-Richards-Shear | 510 | Petroleum Corporation of America | [1] 75 |
| Central Enterprises | 129 | Shreveport Mutual Bldg. & Loan Ass'n | 600 |

[1] Shares listed and dealt in on the New York Stock Exchange.

Section 104 of the Revenue Act of 1928 [1] lays a tax of 50 percent upon the net income, including corporate dividends, of any corporation formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed; and the fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, is presumptive evidence of the proscribed purpose. The test of the presence of the proscribed purpose is " the state of mind itself, and the presumption does no more than make the taxpayer show his hand." *United Business Corporation of America* v. *Commissioner*, 62 Fed. (2d) 754, affirming 19 B. T. A. 809; certiorari denied, 290 U. S. 635. " But the display of that ' hand ' does not relieve the taxpayer if it discloses the state of mind the statute condemns." *A. D. Saenger, Inc.*, 33 B. T. A. 135.

The purpose of petitioner's creation, the character of the properties turned over to it by Richards, the nature and source of its earnings, and the manner in which those earnings have been and were invested at the end of 1929 lead inevitably to the conclusion that the petitioner is a mere holding or investment company. This is denied by the petitioner. It contends that it is a business or operating company, engaged in the management of its properties, conducting a film-booking business, and managing a chain of suburban motion picture theaters. The extent to which the petitioner may have been engaged in any of these activities is fairly reflected by the above statement of facts. The findings are as favorable to the petitioner as the evidence justifies. They disclose that petitioner's limited activities were only incidental to the main purpose

---

[1](a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of, permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

(c) As used in this section the term " net income " means the net income as defined in section 21, increased by the sum of the amount of the dividend deduction allowed under section 23 (p) and the amount of the interest on obligations of the United States issued after September 1, 1917, which would be subject to tax in whole or in part in the hands of an individual owner.

(d) The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire distributive shares, whether distributed or not, of the net income of the corporation for such year. Any amounts so included in the gross income of a shareholder shall be treated as a dividend received. Any subsequent distribution made by the corporation out of the earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his distributed share, be exempt from tax in the amount of the share so included.

of its creation or existence during the taxable year. This purpose was the incorporation and holding of Richards' personal estate in one organization, which was the petitioner, a *personal* holding or investment company.

But even if the petitioner can be said to be a business or operating company, as distinguished from a mere holding company, the facts disclose an accumulation of gains and profits beyond its reasonable needs. At the beginning of the taxable year, not only did it have a paid-in surplus of about $670,000, but it had then accumulated gains and profits in the amount of almost $150,000. At the close of that year the capital and paid-in surplus was intact and those gains and profits totaled approximately $271,000. In none of the activities in which it is claimed that the petitioner was engaged does capital appear to be an essential and necessary factor. Its investments alone were yielding sufficient income to provide for all expenses and leave a substantial net profit for each year, thus obviating the use of capital to finance any activities. It is true the applicable statute does "not contemplate that a business should remain static; it must be assumed that any business shall have the right to grow." *William C. DeMille Productions, Inc.*, 30 B. T. A. 826. But what possible business necessity could there have been here for augmenting this substantial accumulation of earnings, by the entire profits of the taxable year? Cf. *Cecil B. DeMille*, 31 B. T. A. 1161; *William C. DeMille Productions, Inc., supra; Fisher & Fisher, Inc.*, 32 B. T. A. 211.

The petitioner gives three reasons for its course of conduct: First, that at no time in the taxable year did it have cash funds in excess of its immediate needs, with which to pay dividends; second, that cash could have been made available for the payment of dividends only through the sale of securities at sacrifice prices; and, third, that, because of its financial condition at the end of 1929, it was prohibited by Louisiana statute from paying any dividends. The first two of these may be answered together, and they are answered by the petitioner's conduct in reinvesting cash earnings of the year, $740 in life insurance, $859.49 in real estate, $10,000 in bonds, and $62,344.23 in stocks of domestic corporations. Why were these cash earnings totaling $73,943.72 thus reinvested, instead of being distributed? On that score the record is silent, and we can think of no more plausible reason than that petitioner's conduct in this respect was in accordance with a policy, not only to hold and administer, but to add to and build up Richards' personal estate. So far as this record discloses, no dividends were paid during 1927, 1928, or 1929 despite a consistent record of earnings in substantial amounts. The cash earnings certainly for 1929, here involved, could as well have been distributed as reinvested, without the least apparent injury or inconvenience to the petitioner.

The third reason given by the petitioner has less foundation than the other two. Petitioner contends that, because of a large shrinkage in the value of its assets in 1929, it had no " bona fide cash surplus of profits" within the meaning of section 1, Act No. 241 of 1908, General Assembly of Louisiana,[2] and, therefore, it was prohibited by statute from paying any dividend in that year. That statute, however, has been superseded by section 26, Act No. 250 of 1928, General Assembly of Louisiana,[3] by the provisions of which a corporation may lawfully pay a dividend in cash or property out of, among other things not material here, the surplus of the aggregate of its assets over the aggregate of its liabilities, plus the amount of its capital stock. Even at the depreciated value of its securities, after the stock market crash in the fall of 1929, the aggregate of petitioner's assets over the aggregate of its liabilities, plus the amount of its capital stock, was about $500,000. There was, therefore, no statutory bar to the payment of a dividend by the petitioner in 1929. See *A. D. Saenger, Inc., supra.*

This record thus presents the ultimate inquiry whether petitioner as a personal holding and investment company without any other apparent object than the accumulation of a personal estate for an individual, or as a business or operating company, in which capital was not a necessary factor, avoids the present tax by establishing that the substantial earnings basing that tax were accumulated *solely* for the purpose of maintaining the original market value of its capital investments in the face of a falling security market. We do not think it does. Since mere depreciation in market value occurred, and no losses were actually sustained, the tax upon such earnings, except for the interposition of the petitioner, to which Richards conveyed his assets, would have been laid upon Richards in an amount exceeding that payable by the petitioner corporation.

[2] That it shall be unlawful for any domestic corporation, or for any foreign corporation doing business in this State, to make or declare any dividend on its capital stock except from its actual and bona fide cash surplus or profits; or to divide, withdraw or in any manner to pay to the stockholders, any portion of the company's capital stock.

[3] DIVIDENDS: METHOD OF ESTIMATING FUND FOR PAYMENT OF. I. No corporation shall pay dividends in cash or property, (a) except from the surplus of the aggregate of its assets over the aggregate of its liabilities, plus the amount of its capital stock; or (b) out of any surplus due or arising from (1) any profit on treasury shares before resale; or (2) any unrealized appreciation in value or revaluation of fixed assets; or (3) any unrealized appreciation in value or revaluation of inventories before sale; or (4) the unaccrued portion of unrealized profit on notes, bonds or obligations for the payment of money, purchased or otherwise acquired, unless such notes, bonds or obligations are readily marketable, in which case they may be taken at their actual market value; or (5) the unaccrued or unearned portion of any unrealized profit in any form whatever, whether in the form of notes, bonds, obligations for the payment of money, installment sales, credits or otherwise, except as provided in the preceding subparagraph (4).

II. In case all or any part of any cash dividend is paid out of paid-in surplus, the shareholders shall at the time of payment be notified of the fact.

III. No corporation shall pay dividends in shares of the corporation, except from the surplus of the aggregate of its assets, which, for this purpose only, may include items mentioned in Subdivision I (b), over the aggregate of its liabilities, plus the amount of its capital stock.

Such interposition, though not alone conclusive, furnishes one basic fact, here, upon which the incidence of the pending tax penalty is premised. Cf. *United Business Corporation of America*, 33 B. T. A. 83.

Our present conclusions, as well as the applicable statute upon which they are premised, recognize rather than violate the principle that petitioner, corporation, was an entity separate and distinct from Richards. The disputed tax is laid upon the taxpayer, corporation, for what *it* did and not for anything done by Richards.

The petitioner is a mere personal holding or investment company. It has permitted its gains and profits to accumulate beyond its reasonable needs, instead of distributing them. The statute makes either of these facts *prima facie* evidence of a purpose to prevent the imposition of the surtax upon its shareholders. The respondent determined that petitioner was formed or availed of for that purpose; and, by statutory provisions, his determination is presumptively correct. The present record sustains rather than overturns that presumption.

This brings us to the first of petitioner's alternative issues, that respondent has incorrectly included in income $61,847.67, "booking commissions" received from Richards. Petitioner argues that "though these commissions were earned for the corporation and were, in law and in equity, its property, yet [*Lucas* v. *Earl*, 281 U. S. 111] holds that the beneficial ownership of the earnings does not determine the incidence of the tax liability." The case of *Lucas* v. *Earl, supra*, is not in point and has no application here. The commissions were not earned by Richards " for the corporation." They were earned by Richards in the first instance, under his film-booking contracts with Metro-Goldwyn-Mayer, for himself, and were turned over by him to the petitioner in accordance with their agreement, as compensation " for services rendered." Petitioner rendered services to Richards in the taxable year, by performing all services required under his contracts with Metro-Goldwyn-Mayer. There is no evidence that these payments by Richards to the petitioner were anything else than compensation for services rendered. The respondent's action, in including the amount in question in petitioner's income, is, therefore, sustained.

The constitutional questions presented by the petitioner's second alternative issue have heretofore been considered, and decided adversely to the petitioner. *United Business Corporation of America* v. *Commissioner, supra; Williams Investment Co.* v. *United States*, 3 Fed. Supp. 225.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TRAMMELL, ARUNDELL, and VAN FOSSAN dissent.