## R. & L., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8084.

Circuit Court of Appeals, Fifth Circuit.

June 24, 1936.

Sidney L. Herold, of Shreveport, La., for petitioner.

Helen R. Carloss and Sewall Key, Sp. Assts. to Atty. Gen., Robert H. Jackson, Asst. Atty. Gen., and Herman Oliphant, Gen. Counsel, for Department of the Treasury, and DeWitt M. Evans, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The taxpayer R. & L., Inc., was by the Commissioner and the Board of Tax Ap-

peals held liable to pay the special tax of 50 per cent. of its net income for the year 1929 imposed by section 104 of the Revenue Act of 1928 (26 U.S.C.A. § 104 note), as being a corporation formed or availed of that year for the purpose of preventing the imposition of surtax upon its shareholders. It contends that it is not liable to the tax and that an item of $61,847 returned by it as income was really not such.

The disputed item is commissions mostly paid by Metro-Goldwyn Corporation for the sale and booking of its motion pictures. The contract therefor was made with E. V. Richards. At the time of his forming the R. & L. Corporation in 1927 he transferred nearly all his property to it for its stock. Touching this contract he testifies: "I turned over some real estate and stocks in the Saenger Company and stock in suburban theatres and properties that I owned in New Orleans, the film exchange business and the booking agency. The film exchange business distributes motion pictures. The booking agency engages in the booking of pictures, road shows and attractions generally. The commissions from those two businesses amounted to much in some years. The income tax return for 1929 showing commissions earned by R. and L., Inc., $61,-847, must have been the Metro commissions earned on the sale and booking of pictures. My corporation was in that business." The secretary-treasurer testified that the major portion of the income of R. & L., Inc., has been through the earning of commissions through the booking of films, and that an employee named Bryan was in charge of this business. "The checks for the commissions would come to E. V. Richards, and he would indorse them over to R. and L., Inc., and they would go into the treasury of the Company." The organization minutes of R. & L., Inc., say on the point: "On motion of E. V. Richards, Jr., duly seconded, a resolution was unanimously carried to the effect that the charter so prepared was satisfactory and that same be adopted and signed as the charter of R. and L., Inc.; and that the said E. V. Richards, Jr., was to turn over the earnings and commissions of the Metro-Goldwyn Corporation to R. and L., Inc., for services rendered to them for a period of five years." The commissions were, as has been seen, returned as income of the taxpayer in 1929, both Richards and the secretary-treasurer

signing the return. While there is not shown any assignment of the contract with Metro-Goldwyn or novation of it, it is plain that the services were rendered by the taxpayer through its employee Bryan and that this money was earned by it. It may be that Richards in strictness ought also to have returned it as his income, offsetting it by the payment to the corporation for its services to him as an expense. Compare Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. But that would leave the taxpayer still earning this money, Richards being then regarded as its paymaster instead of Metro-Goldwyn. The money was in any case a compensation for its services within the definition of income in section 22 (a) of the act (26 U.S.C.A. § 22 and note).

■ R. & L., Inc., was formed by Richards on the advice of counsel to take over and hold his property, probably owned in community with his wife, to avoid complications that might arise on his death out of the minority of his seven children. For its entire capital stock he transferred to it some $82,000 of realty, $112,000 in money, notes, and bonds, and $361,300 in various stocks. One qualifying share of stock was issued to the secretary-treasurer, and the rest was divided between Richards and his wife, the three being the board of directors. Richards had an outside salary of $66,000 per annum upon which he lived and supported his family. The corporation besides the commissions discussed above received rents, interest, and dividends which in 1929 came to about $76,000. Its expenses were slight. The net earnings were about $64,000 in 1927, $89,000 in 1928, and $120,000 in 1929. No dividends were paid in either year, and the balance sheet for 1929 showed a surplus of $942,000. There is no explanation as to how it arose. We surmise it was largely estimated on market values of stocks. On these facts, laying to one side the question of whether a purpose in forming the corporation was to escape surtaxes on income on the part of Richards, we are of opinion that it could be concluded that the corporation was availed of for that purpose. The only active business that the corporation engaged in was that in which it earned the commissions. That required no capital except the salary of the employee Bryan. There was no need of more capital to carry on business which prevented paying out its net profits in dividends. In 1927 and 1928 no reason is suggested for not declaring dividends except that the cash money received as income was put into additional stocks and real estate. This is just the accumulation which the tax is intended to discourage. In 1929 it is argued that there was a loss in market value of the stocks, but it was much less than the surplus value referred to above. No losses were realized by sale. The corporation had all its investments unimpaired except that at the moment it could not sell them for so much as before. This does not seem to justify paying no dividend at all from a cash net income of some $130,000. We think the evidence is sufficient to support the fact finding that the corporation was availed of for the purpose of escaping surtaxes to the stockholders by accumulating its profits. The decision of the Board of Tax Appeals is affirmed.