## CHARLESTON LUMBER CO. v. UNITED STATES.

### No. 3490.

District Court, S. D. West Virginia.

July 27, 1937.

Hawthorne D. Battle, Jackson D. Altizer, and D. J. Savage, all of Charleston, W. Va., for petitioner.

Charles M. Love, of Charleston, W. Va., and M. C. Ferguson, of Washington, D. C. (James W. Morris and Andrew D. Sharpe, both of Washington, D. C., and George I. Neal, of Huntington, W. Va., on brief), for respondent.

McCLINTIC, District Judge.

This suit was instituted to recover the sum of $9,077.93, with interest thereon from the dates of payment, alleged to have been illegally collected from the petitioner, Charleston Lumber Company, by the respondent, the United States of America. The controversy involves the sole question of whether the petitioner was in the year 1924 liable for additional taxes under section 220 of the Revenue Act of 1924 (43 Stat. 277) relating to the accumulation of profits by corporations for the purpose of preventing the imposition of surtaxes upon

their shareholders. The respondent contends the petitioner was liable for the tax under said section, which contention is denied by petitioner.

The facts herein are as follows:

The plaintiff corporation was organized in 1905 under the laws of the State of West Virginia with a capital stock of $50,000. Since its organization the corporation has been continuously engaged in the business of buying, selling, and manufacturing lumber and building materials in the city of Charleston and vicinity.

S. C. Savage and his brother, W. L. Savage, have been actively connected with the corporation since its organization as officers and stockholders therein. In 1917 they became the real owners of its entire capital stock. Since that time W. L. Savage has been president of the company, and S. C. Savage has been vice president and treasurer. They have spent all their time in the active management of the affairs of the company at an annual salary of $15,000 each.

Petitioner's assets at the beginning and end of the year 1924 were as follows:

### Assets

| Items | Jan. 1, 1924 | Dec. 31, 1924 |
|---|---|---|
| Cash | $ 8,569.13 | $ 6,261.19 |
| Notes receivable | 34,808.73 | 61,289.54 |
| Accounts receivable | 173,004.72 | 120,364.73 |
| Inventory merchandise | 77,117.00 | 105,437.05 |
| U. S. obligations | 24,234.34 | 19,084.34 |
| Stocks | 18,022.00 | 31,319.00 |
| Pence Springs Orchard | 12,394.44 | 11,923.58 |
| Savage Brothers | 86,000.00 | 86,000.00 |
| Prepaid insurance | 12,821.50 | 17,677.63 |
| Land | 44,727.06 | 61,767.82 |
| Autos and trucks | 10,556.67 | 16,556.67 |
| Machinery and equipment | 69,549.56 | 52,718.43 |
| Buildings | 52,542.51 | 52,542.51 |
| Income tax refund | 12,626.64 | 6,472.83 |
| Young street houses | | 4,650.45 |
| | $636,974.30 | $654,065.77 |

Its liabilities and capital on the same dates were as follows:

### Liabilities and Capital

| Items | Jan. 1, 1924 | Dec. 31, 1924 |
|---|---|---|
| Mar. 1, 1913, value | $ 35,380.94 | $ 17,336.66 |
| Accounts payable | 1,622.40 | 9,900.88 |
| Unrealized 3/1/13 value | —— | —— |
| Realized 3/1/13 value | —— | —— |
| Reserve bad debts | 1,327.52 | 3,566.88 |
| Reserve depreciation | 50,205.97 | 46,529.08 |
| Capital stock | 50,000.00 | 50,000.00 |
| Surplus | 498,437.47 | 526,732.27 |
| | $636,974.30 | $654,065.77 |

The increase in surplus of $28,294.80 as of December 31, 1924, embraced earnings in the amount of $10,250.52 and the sum of $18,044.28 representing the cancellation of a reserve for realized March 1, 1913, appreciation on machinery which had accumulated between March 1, 1913, and December 31, 1924.

In 1924 the company employed about 100 men in its plant. Its business and net income, as well as that of other similar companies in this locality, had greatly decreased in 1924 and labor costs had substantially increased, as compared with 1923, as follows:

| | 1923 | 1924 |
|---|---|---|
| Gross sales | $996,719.13 | $748,458.93 |
| Costs of manufacturing | 162,122.13 | 179,271.25 |
| Net income | 76,519.09 | 16,018.45 |

In 1925 the company's gross sales decreased to $653,375.58, or a drop of nearly $100,000 from 1924. The net income decreased from $16,018.45 in 1924 to $233.36 in 1925. Throughout its existence about 90 per cent of the company's business was on credit. The lumber and building market in this vicinity in the year 1924 was in a depressed condition and was rapidly getting worse. The officers of the company were apprehensive of the future and prudence required a conservative policy of retrenchment.

Reverting to a consideration of the assets of the company, the item of "Cash" represented money used in the business of the company. The items of "Notes receivable" and "Accounts receivable" represented customers' debts owing to the company from the sale of lumber on credit. The item of "Inventory Merchandise" consisted of lumber used in the business of the company. This item had increased as of December 31, 1924, owing to the depressed market conditions. The item of "U. S. obligations" represented certain Victory Loan bonds purchased by the company during the World War. The item of "Prepaid insurance" represented unexpired premiums on fire insurance on the property of the company and the premiums paid on life insurance policies on the lives of W. L. Savage and S. C. Savage, with loss clauses payable to the company.

The item of "Land" represented the book value of all the real estate of the company amounting to the sum of $61,767.82 as of December 31, 1924. The details of this account are:

(a) Plant site .................... $27,309.75
(b) Paving on North Rand street
    bounding plant ............ 316.67

Total ................................ $27,626.42

and other real estate as follows:

| | | |
|---|---|---|
| (a) | Miscellaneous real estate............. | 27,141.40 |
| (b) | McCaskey real estate.................. | 7,000.00 |
| | Total ................................... | $61,767.82 |

The McCaskey real estate in the amount of $7,000 consists of land upon which the "Young Street Houses," appearing as the last item in the assets of the company, are located. These houses had a book value of $4,650.45. Accordingly, the total real estate owned by the company in 1924 amounted to the sum of $66,418.27.

The items of "Autos and trucks," "Machinery and equipment," and "Buildings" represented personal property and the plant used in the manufacture of lumber and the distribution thereof to the customers of the company. The item of "Income tax refund" represented an overassessment allowed by the Commissioner of Internal Revenue to the company on account of overpayment of taxes for years prior to 1924.

The foregoing items were absolutely necessary to the operation of the business of the company, and were unquestionably reasonably needed in its business, including a portion of the "Land" account in the amount of $27,626.42. There remains for consideration the items of "Stocks," "Pence Springs Orchard," "Savage Brothers," the balance of the "Land" account, and "Young street houses," the latter two items having a book value of $38,791.85.

Consideration will be first given to the items of "Stocks" and "Land." The book value of the stocks is $31,319, and that part of the "Land" account consisting of miscellaneous real esate is $27,141.40. It appears that for many years prior to 1924 it had been the regular policy of the lumber company, as well as the policy of similar concerns in this locality, from time to time to buy local stocks and bonds in other corporations and to acquire miscellaneous real estate. These purchases were made in order to secure new business for the company, collect old accounts, and to promote civic enterprises. In the year 1924 the company expended the sum of $9,724.09 in the acquisition of such miscellaneous real estate and the sum of $13,297 in the acquisition of such local stocks and bonds. It had in prior years invested the sum of $18,022 in similar local stocks and bonds, and the sum of $17,417.31 in miscellaneous local real estate. Each of these purchases was justified by the dic-

tates of sound business management. Through these purchases the company secured a large amount of new business which enabled it to earn substantial profits, including the net profit of $16,018.45 in the year 1924. These acquisitions were within the reasonable needs of the business of the company and represented customary expenditures in the normal business of the corporation.

In regard to the item of "Young street houses" of a book value of $4,650.45, this item should be considered with the McCaskey real estate of a book value of $7,000, as these houses were located on the McCaskey land. Both were purchased in 1924 in one transaction. It appears that both the Savages had for many years prior to 1924 entertained the purpose of purchasing certain real estate adjoining the plant of the company, known as the McCaskey and Frankenberger properties, for the purpose of getting rid of certain nuisances and to use the property to expand the plant of the company. This land was the only real estate potentially available which might be acquired and used for the expansion of the company. For several years prior to 1917 and thereafter efforts were made to consummate this purchase, but the price of $85,000 asked for it was considered excessive. However, with this plan in mind, the officers of the company had been accumulating profits to take advantage of any favorable opportunity presented for the purchase of the property. On account of unsettled conditions existing in the year 1924, the McCaskey property was in that year offered to petitioner at a greatly reduced price, namely, $11,650.45. The offer was accepted and the property purchased by the company. In the year 1925 the adjoining property owned by Frankenberger was purchased by the company at a price of $50,241.88. Since their acquisition, these properties have been used by the company in its business as a place to store lumber, as the location for a garage and as living quarters for the families of its employees. These purchases were clearly prudent investments justified by the needs and business policies of the company.

As to the items of "Pence Springs Orchard" and "Savage Brothers," these accounts represented loans made to S. C. Savage and W. L. Savage prior to the year 1924. Substantially all of the "Pence Springs Orchard" loan was made in the

years 1920 and 1921, and in the latter year $13,000 was paid thereon. The account decreased in 1924 by payments of $470.86 and was paid in full in the year 1925. The "Savage Brothers" account originated in the year 1917 when the company lent to S. C. Savage and W. L. Savage the sum of $90,220, the money being borrowed by the corporation from a local bank upon the notes of the corporation endorsed by said Savages. The loan was made in order to enable them to purchase the remaining outstanding stock of the company. Payments on this account were made in the year 1918 amounting to approximately $5,300. The account remained unchanged from the year 1918 through the year 1924. In 1925 a payment of $13,000 was made thereon, and in the next several years payments aggregating $33,000 were made on said account.

The company paid no dividends in the year 1924 nor in several years before that time, as well as several years thereafter. No loans were made to stockholders in the year 1924. W. L. Savage in said year overdrew his salary account $239.60, whereas S. C. Savage did not draw $4,914.02 of his salary. Each reported in his respective income tax return and paid taxes on his salary in the amount of $15,000.

Neither W. L. Savage nor S. C. Savage, in determining whether dividends should be paid out of the gains and profits of the company in the year 1924, gave any thought whatsoever to the matter of preventing the imposition of surtaxes upon themselves as shareholders of the company. They were not advised by any income tax expert in this regard. They determined the policies of the company upon the basis of sound business judgment. At the end of each year an accountant was called in to make up the tax returns of the company as well as the tax returns of S. C. Savage and W. L. Savage on the basis of their respective books and records. Such accountant had nothing whatever to do with the policies of the company or its determination in respect to the payment of dividends.

The company seasonably filed its income tax return for the year 1924 reporting a net income of $18,851.59 and a tax of $2,106.42 was paid by it. In the year 1927 this return was audited by a revenue agent who found and reported that the return was correct in all respects except the plain-tiff was entitled to an additional deduction of $2,832.94 on account of bad debts. This resulted in an overassessment in favor of the taxpayer in the amount of $354.11. The report made no claim for additional taxes on account of an alleged violation of section 220 of the Revenue Act of 1924 (43 Stat. 277). After the report was filed with the bureau, the same was accepted by it as correct in so far as the ordinary income tax liability of the company was concerned. However, the Commissioner of Internal Revenue assessed additional taxes in the amount of $7,655.12 and interest, on the ground that the company had "permited is gains and profits to accumulate beyond the reasonable needs of the business in violation of said section of the Revenue Act."

The two stockholders of the company, namely, W. L. Savage and S. C. Savage, each seasonably filed with the collector of internal revenue for the Collection District of West Virginia his personal income tax return for the year 1924. W. L. Savage paid a total tax of $401.20 and S. C. Savage paid a total tax of $429.77. Each reported and paid taxes on a salary of $15,000, although S. C. Savage actually received only the sum of $10,085.98 of his salary of $15,000. No additional tax was assessed against either S. C. Savage or W. L. Savage. If the Charleston Lumber Company had distributed $10,000 in dividends in 1924, W. L. Savage would have paid additional taxes thereon of $133.28 and S. C. Savage would have paid additional taxes of $136.16. If the company had distributed $14,266.14 (its entire net income for the year less income taxes), W. L. Savage would have paid additional taxes of $227.34 and S. C. Savage $230.82. If the entire net income of $16,018.45 had been distributed in dividends, W. L. Savage would have paid additional taxes in the sum of $270.97, and S. C. Savage $274.27.

In view of the foregoing, the court further finds as a fact that the earnings of the company in the year 1924 were required in the business of the company. Unfavorable market conditions did not justify the distribution of the accumulations of the company to its shareholders. In said year the company continued its normal prudent business management in making such investments and accumulating surplus reasonably required for the needs of the company's business. It took no action

whatsoever for the purpose of preventing the imposition of surtaxes upon its shareholders. The corporation was not a mere holding or investment company. It was not formed or availed of in 1924 for the purpose of preventing the imposition of a surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. These gains and profits were not permitted to accumulate beyond the reasonable needs of the business. Neither the plaintiff nor its officers or directors entertained at any time a purpose to avoid the imposition of surtaxes upon its shareholders.

Notwithstanding the protest and denial of liability by petitioner, the Commissioner of Internal Revenue assessed, under the provisions of section 220 of the Revenue Act of 1924, additional taxes against petitioner in the amount of $7,655.12 and interest thereon. Subsequently, on December 12, 1934, petitioner paid the principal amount of said tax, and later, on February 11, 1935, paid the sum of $1,422.81 representing a portion of the interest on said assessment. On April 19, 1935, petitioner fully filed a proper claim for refund setting forth the claims and grounds asserted herein, and upon the rejection of the claim this suit was instituted on August 15, 1935.

Upon the foregoing facts the question of law involved is the applicability of section 220 of the Revenue Act of 1924 (43 Stat. 277). Said section is as follows:

"Sec. 220. (a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 230 of this title and shall (except as provided in subdivision (d) of this section) be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

"(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax.

"(c) When requested by the Commissioner, or any collector, every corporation shall forward to him a correct statement of such gains and profits and the names and addresses of the individuals or shareholders who would be entitled to the same if divided or distributed, and of the amounts that would be payable to each.

"(d) As used in this section the term 'net income' means the net income as defined in section 232, increased by the sum of the amount of the deduction allowed under paragraph (6) of subdivision (a) of section 234, and the amount of the interest on obligations of the United States issued after September 1, 1917, which would be subject to tax in whole or in part in the hands of an individual owner."

It is well settled that the determination of the Commissioner of Internal Revenue is presumed to be correct and the burden is upon the taxpayer to prove it otherwise. Helvering v. Independent Life Insurance Co., 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. 1311; New Colonial Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L. Ed. 1348; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623. However, this statute, imposing a tax which is in effect a penalty, should be strictly construed and should not be extended to cover cases which do not fall within its letter. United Business Corporation v. Commissioner, 19 B.T.A. 809, 826. It is clear that the petitioner was not a mere holding or investment company and was not formed for the purpose of preventing the imposition of surtaxes upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. The company has been actively engaged in the lumber business ever since 1905 and throughout this period has carried on its business and managed its corporate affairs in the manner customary with similar concerns. It was in no sense a mere dummy corporation, as is frequently found to be true in the decided cases holding a taxpayer liable for violation of this provision of the revenue acts. In the dissenting opinion in the case of National Grocery Co. v. Commissioner, 35 B.T.A. 163, at page 172, it is remarked: "No case has come before the courts or this Board where a corporation engaged in a mercantile or industrial activity, organized prior to the

enactment of the income tax law and which has consistently followed the policy of 'ploughing its earnings back into the business', has ever been required to pay the tax and penalty imposed by the section in question. In practically every case in which such penalty has been imposed, a large portion of the corporation's assets had been conveyed to it at the time of its formation, or at a later time, by the principal stockholder or stockholders, or the corporation was 'a mere holding company.' Typical cases are the following: United Business Corporation of America [v. Com'r], supra; United Business Corporation of America [v. Com'r], 33 B.T.A. 83 (reversed on stipulation of the parties); Keck Investment Co. [v. Com'r], 29 B.T.A. 143, affirmed [C.C.A.] 77 F.(2d) 244, certiorari denied 296 U.S. 633 [56 S. Ct. 156, 80 L.Ed. 450]; William C. DeMille Productions, Inc. [v. Com'r], 30 B. T.A. 826; Cecil B. DeMille [v. Com'r], supra [31 B.T.A. 1161]; Fisher & Fisher, Inc. [v. Com'r], 32 B.T.A. 211, affirmed [C.C.A.] 84 F.(2d) 996; Irvington Investments Co. [v. Com'r], 32 B.T.A. 1165; A. D. Saenger, Inc. [v. Com'r], supra [33 B.T.A. 135]; R. & L., Inc. [v. Com'r], 33 B.T.A. 857, affirmed [C.C.A.] 84 F.(2d) 721, certiorari applied for September 21, 1936 [299 U.S. 588, 57 S.Ct. 116, 81 L.Ed. 434]; Edward G. Swartz, Inc. [v. Com'r], 33 B.T.A. 355; Rands, Inc. [v. Com'r], 34 B.T.A. 1094; Almours Securities, Inc. [v. Com'r], supra [35 B.T.A. No. 1, p. 61]. There is a substantial difference between the two classes of corporations, although I would not go so far as to say that the former could never be subjected to the penalty."

■ The controversy therefore resolves itself into the question of whether or not the petitioner corporation was availed of for the purpose of preventing the imposition of surtaxes upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed. If these gains and profits were permitted to accumulate beyond the reasonable needs of the business, such fact is prima facie evidence of a purpose to escape the surtax.

The respondent contends that the accumulation of surplus by petitioner in the year 1924 was beyond the reasonable needs of its business. It complains that the petitioner's investments in real estate and local stocks and bonds show the unreason-

ableness and lack of necessity of such accumulation. Standing alone, these acquisitions might indicate an unreasonable accumulation of the gains and profits of the company. However, in this case it has been clearly shown that the same were necessary, proper, and prudent. The purchases were made in order to promote the business affairs of the company and increase its gains and profits. In the case of R. C. Tway Coal Sales Co. v. United States (D.C.) 3 F.Supp. 668, 671, affirmed (C.C.A.) 75 F.(2d) 336, the plaintiff was engaged in the coal brokerage business selling all the coal mined by the R. C. Tway Coal Company. All the stock of both companies was owned by R. C. Tway. The corporation also dealt extensively in securities, taking title thereto in the name of R. C. Tway, the president of the concern, and paying for them out of the funds of the corporation which were charged to the account of R. C. Tway. The Commissioner of Internal Revenue contended the corporation was availed of for the purpose of preventing the imposition of surtaxes upon its shareholders. The District Court overruled this contention and held the company not subject to the tax imposed by section 220 of the Revenue Act of 1921 (42 Stat. 247). The court said in its opinion: "Necessarily, the directors and officers of a corporation must be given, even in federal tax matters, some discretion and some latitude as to what constitutes the reasonable needs of the corporate business. It may well be doubted if the federal government, for the purpose of increasing its taxes, can absolutely destroy or arbitrarily limit this discretion resting in the directors of a corporation organized under state law."

In the case of William C. DeMille Productions v. Commissioner, 30 B.T.A. 826, at page 830, the Board said: "It requires no argument to support the premise that the cited sections do not contemplate that a business should remain static; it must be assumed that any business shall have the right to grow."

In Montgomery Federal Income Taxation (1936–1937) page 744, the question as to what is unreasonable accumulation of earnings is summarized as follows: "If earnings are required for the business in the light of all the surrounding circumstances, their retention by the corporation is not unreasonable. Accumulations for additions to plant reasonably required by

the business or to be placed in a sinking fund for bond retirement are proper. (Art. 102-3, Reg. 94.) The question is one of fact to be decided on the basis of the volume of business done, principles of sound business management, and the conditions of the times. In the case of corporations other than holding or investment companies, it should ordinarily be possible to show a reasonable basis for the retention of earnings, when sound management exists."

It may be pointed out that some of the profits which the respondent seeks to tax herein were realized from those purchases made by petitioner corporation in earlier years, herein complained of by respondent as to the year 1924. See R. C. Tway Coal Sales Co. v. United States (D.C.) 3 F. Supp. 668, supra.

The petitioner has also shown that it had no purpose to avoid the payment of surtaxes upon its shareholders. It is pointed out in the case of Saenger v. Commissioner (C.C.A.5, 1936) 84 F.(2d) 23, 24: "But the act does not impose the 50 per cent. additional income tax on corporations which in fact have gains and profits in the tax year and do not distribute them, but upon any corporation 'formed or availed of for the purpose of preventing the imposition of surtax upon its stockholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.'"

Petitioner corporation in the year 1924 returned and paid taxes on the sum of $2,833.14 which the revenue agent found in his report was not taxable income. This report did not intimate that the petitioner corporation was liable for taxes under section 220 of the Revenue Act of 1924. Any illegal purpose is further refuted by the fact that if petitioner had distributed all or a part of its net profits in the year 1924 the resulting taxes to its shareholders would have been very nominal. As stated in the case of United Business Corporation v. Commissioner, supra, 19 B.T.A. 809, on page 830: "Considering also the comparatively small amount of dividends upon which tax was thus avoided, and the penal nature of the tax imposed by section 220, we are of the opinion that there is sufficient doubt respecting the purpose of the 1920 transactions to require us to resolve that doubt against the imposition of the tax for that year under section 220."

No loans were made by petitioner to its shareholders in the year 1924. In many of the decided cases holding a taxpayer liable under section 220 of the several revenue acts, loans were made to stockholders in the year in which the statute was involved as a transparent plan to distribute assets of a corporation without subjecting the shareholders to surtaxes on dividends. United Business Corporation v. Commissioner (C.C.A.2) 62 F.(2d) 754; A. D. Saenger, Inc., v. Commissioner (C.C.A.5) 84 F.(2d) 23; DeMille Productions, Inc., v. Commissioner, 30 B.T.A. 826; United Business Corporation v. Commissioner, 19 B.T.A. 809; National Grocery Co. v. Commissioner, 35 B.T.A. 163. Furthermore, the business of the company in 1924 as compared with 1923 had decreased about 25 per cent., amounting to approximately $250,000. Its net income had dropped from $76,519.09 in 1923 to $16,018.45 in 1924. The lumber market was bad and labor costs increasing. Certainly under these conditions the corporation would have been foolhardy in 1924 to distribute its gains and profits to its shareholders. Self-preservation required the accumulation of these gains and profits in 1924.

Respondent places great reliance upon the fact that the corporation lent to S. C. Savage and W. L. Savage substantial amounts prior to the year 1924. The respondent contends that these transactions were not in reality loans, but were the equivalent of dividends paid to the stockholders of the company and taxable as such. The record herein clearly shows that these advancements were bona fide loans which were from time to time substantially reduced by payments made to the corporation. If, however, it may be assumed that respondent's position is sound, then it necessarily follows that such distributions were taxable to the shareholders in the years in which the loans were made. The records of petitioner were examined by the Commissioner in prior years, and no claim was ever made that such loans were equivalent to dividends nor that petitioner was in said years liable for the tax under section 220 of the earlier revenue acts. On the contrary, petitioner was allowed and paid substantial refunds of taxes for years prior to 1924. This was, no doubt, done after careful examination of petitioner's records and accounts.

Respondent further argues that petitioner's purpose to avoid surtaxes for the

year 1924 is evidenced by the fact that in 1917 it received a letter from a local auditing company advising it how to set up on its records the loan made by petitioner in that year to S. C. Savage and W. L. Savage, and further advising it that this loan might be liquidated through the payment of dividends by the company over a period of five or six years "in order to keep down the personal income tax of the Savages." This contention is rendered untenable by the fact that the Savages utterly disregarded this advice given them in the year 1917. Furthermore, it is shown that the policies of the company were based on sound business management without regard to the question of surtaxes on its shareholders. No advice whatsoever upon this question was given to the Savages in connection with their taxes for the year 1924 or any other year, except the aforementioned letter received in the year 1917, and these parties were not actuated or influenced in any way in the conduct of the affairs of the company by the question of income taxes either against the corporation or its shareholders. Furthermore, it may be pointed out that the sole issue herein is the tax liability of the corporation in the year 1924, not in earlier years. Of course, the profits of the company in earlier years and the conduct of its affairs during said period is relevant in determining this question. As stated in United States Business Corporation v. Commissioner, 33 B.T.A. 83, at page 87: "The application of section 220, supra, in any particular taxable year is wholly dependent upon whether the facts and circumstances pertaining to that year bring the taxpayer within the scope of that section—that is, was the corporation availed of for the prohibited purpose during the taxable year in question, irrespective of a finding by the Board and the courts that it was so availed of in a prior taxable year."

In view of the foregoing, I am of the opinion that the gains and profits of petitioner in the year 1924 were not permitted to accumulate beyond the reasonable needs of its business, and that neither the petitioner nor its officers entertained a purpose to avoid the imposition of surtaxes upon its shareholders. Accordingly, it follows that the petitioner was not formed or availed of in the year 1924 for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed.

I am therefore of the opinion that judgment should be rendered herein for petitioner for the sum of $9,077.93, with interest from the dates of payment, and a decree may be entered in accordance herewith.