SUPERIOR OIL COMPANY *v.* STATE OF MISSIS-
SIPPI EX REL. KNOX, ATTORNEY GENERAL.

No. 28.   Argued October 31, 1929.—Decided February 24, 1930.

*Messrs. W. Lee Guice* and *William H. Watkins,* with whom *Mr. John L. Heiss* was on the brief, for appellant.

*Mr. James W. Cassedy, Jr.,* Assistant Attorney General of Mississippi, *pro hac vice,* by special leave of Court, with whom *Messrs. George T. Mitchell,* Attorney General of Mississippi, and *E. C. Sharp* were on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit by the State of Mississippi to collect a tax on distributors of gasoline of three and four cents respectively per gallon sold, according to the statute in force at the time of the sales. The defence was that the sales were in interstate commerce. The Supreme Court of the

State upheld the tax, 119 So. Rep. 360, and the defendant, the Superior Oil Company, appealed to this Court on the ground that the statutes as applied violated the commerce clause of the Constitution of the United States. Article 1, Section 8.

The facts are as follows. The Superior Oil Company, a corporation created and doing business in Mississippi, sold gasoline to packers in Biloxi in that State and delivered it at the packers' wharves. The latter loaded the oil upon their own fishing boats and sent it out to the neighborhood of Grants Pass, Louisiana, where they delivered it to shrimp fishermen for use in fishing. The fishermen brought their catch back to Biloxi, sold it to the packers and were charged with the cost of the oil in account. The appellant received in each case from the purchaser what is called a bill of lading, signed by the master of the boat on which the oil was loaded and reading in part: " Consigned to Gussie Fontaine Pkg. Co. [or other purchasers]. Destination: Grants Pass, La. By boat Frank Louis, owned or operated by Gussie Fontaine Pkg. Co." The instrument then provided that " the property consigned herein remains the property of said Superior Oil Company until it shall be delivered to consignee or consignee's agent at point of destination", with provisions throwing all risks upon the purchasers. The seller of course paid no freight. The document seems to have had no other use than, as the Supreme Court of Mississippi said, to try to convert a domestic transaction into one of interstate commerce. There was no consignee at the point of destination. The goods were delivered to the so-called consignee before they started, and were in its hands throughout. There was no point of destination for delivering of the oil but merely a neighborhood in which the packers that had bought it and already held it expected to sell it again. The document hardly can affect the case, because it is " not within the power of the

parties by the form of their contract to convert what was exclusively a local business, subject to state control, into an interstate commerce business protected by the commerce clause "; *Browning* v. *Waycross*, 233 U. S. 16, 23; at least when the contract achieves nothing else.

The importance of the commerce clause to the Union of course is very great. But it also is important to prevent that clause being used to deprive the States of their lifeblood by a strained interpretation of facts. We may admit that this case is near the line. There was a regular course of business known to the appellant, that took the gasoline into another State, and if by mutual agreement the oil had been put into the hands of a third person, a common carrier, for transportation to Louisiana the mere possibility that the vendor might be able to induce the carrier to forego his rights might not have been enough to keep the transaction out of interstate commerce. *A. G. Spalding & Bros.* v. *Edwards*, 262 U. S. 66, (a case of foreign export, see *Sonneborn Brothers* v. *Cureton*, 262 U. S. 506, 520, 521). But here the gasoline was in the hands of the purchaser to do with as it liked, and there was nothing that in any way committed it to sending the oil to Louisiana except its own wishes. If it had bought bait for fishing that it intended to do itself, the purchase would not have been in interstate commerce because the fishing grounds were known by both parties to be beyond the State line. A distinction has been taken between sales made with a view to a certain result and those made simply with indifferent knowledge that the buyer contemplates that result. *Louisville & Nashville R. R. Co.* v. *Parker*, 242 U. S. 13, 14. *Kalem Co.* v. *Harper Brothers*, 222 U. S. 55, 62. The only purpose of the vendor here was to escape taxation. It was not taxed in Louisiana and hoped not to be in Mississippi. The fact that it desired to evade the law, as it is called, is immaterial, because the very meaning of a line in the law

is that you intentionally may go as close to it as you can if you do not pass it. *Bullen* v. *Wisconsin,* 240 U. S. 625, 630, 631. But on the other hand the desire to make its act an act in commerce among the States was equally unimportant when it was apparent that the buyer's journey to Louisiana was accidental so far as the appellant was concerned. It is a matter of proximity and degree as to which minds will differ, but it seems to us that the connection of the seller with the steps taken by the buyer after the sale was too remote to save the seller from the tax. Dramatic circumstances, such as a great universal stream of grain from the State of purchase to a market elsewhere, may affect the legal conclusion by showing the manifest certainty of the destination and exhibiting grounds of policy that are absent here.

*Judgment affirmed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE BUTLER dissent.