PAUL PLUNKETT & CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91741. Promulgated August 6, 1940.

Mark Eisner, Esq., for the petitioner.
Allen T. Akin, Esq., for the respondent.

466

**OPINION.**

TYSON: Two issues are presented for our decision: (1) Were commissions in the amount of $456,626.50, earned by petitioner in connection with the sale of Southern California Gas Co. and Midway Gas Co. stock and paid by check to Westchester, income to petitioner in the taxable year? and (2) Did the petitioner file a false and fraud-

ulent return with intent to evade tax for the taxable year ending February 29, 1928?

On the first issue petitioner contends that it did not receive any part of the commissions in question, but had assigned and transferred its right to such commissions prior to the time they were due and payable.

There is no question but that $456,626.50 was paid to Westchester on November 17, 1927, by the vendors of the Southern California Gas Co. and Midway Gas Co. stock, as commissions for services rendered by petitioner in bringing about the sale of that stock. Obviously, petitioner sought, by various assignments and transfers to nominees and its controlled corporations, to so camouflage the transaction as to conceal its own identity as the recipient of the commissions. In its income tax return it even went so far as to treat as a bona fide sale the transfer of its right to receive the $456,-626.50 commissions to its employee and nominee, Booth, by including in that return, as income, the $15,000 which it furnished Booth to pay for the transfer. It also disguised as a "loan" $450,000 of the commissions turned over to it by Westchester, its wholly controlled Canadian corporation, immediately upon its receipt by Westchester. In fact, it appears from the record that on November 15, 1927, two days before the check for $456,626.50 for commissions was given by Meyer to Westchester, and three days before it was deposited to Westchester's account, petitioner executed its debenture bond to Westchester for the "loan" and on November 18, 1927, the same day the check was deposited in the Bank of Montreal to the account of Westchester, petitioner received Westchester's check for $450,000 and petitioner's books showed a credit of that amount to Westchester. Subsequently, petitioner took up its debenture, without the payment of interest, by issuing 450 shares of its class B stock therefor, which stock was thereafter transferred to the Bryan Corporation, obviously organized for that purpose, and all the stock of Bryan was transferred to Anchorage, which owned all the Westchester stock, as petitioner's nominee, and, in turn, was owned by the same interests which owned all the stock of petitioner.

The commissions here in question were, at all times, subject to the unfettered control of petitioner. Petitioner concedes, and we have so found, that Booth was but an agent or conduit of petitioner to transfer the contract to Westchester. Petitioner, through its nominee, Anchorage, owned Westchester. The so-called loan of $450,000 was but a subterfuge and a sham by which petitioner took over that amount of the commissions from Westchester. No real consideration was given for the loan. The debenture executed in favor of Westchester was, at all times, under the control of petitioner and the class B stock for which it was exchanged eventually found its way

back to the Bryan Corporation, whose stock was all issued to petitioner's nominee, Anchorage. Under the facts, petitioner must be regarded as the recipient of the entire amount of $456,626.50, which was at all times subject to its absolute command and disposition. Westchester was nothing more than petitioner's agent, whose sole function was to receive the commissions and pass them on to petitioner. *Kaspare Cohn Co., Ltd.*, 35 B. T. A. 646, and authorities cited therein. It is true that petitioner had, through its agent, Booth, assigned the contract to Westchester, but all of Westchester's stock was held by Anchorage, petitioner's nominee, and Westchester had no ownership in the commissions which it could exercise independently of petitioner. "Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Corliss* v. *Bowers*, 281 U. S. 376. It is the command of income and its benefits which mark the real ownership of property. *Higgins* v. *Smith*, 308 U. S. 473; and *Griffiths* v. *Commissioner*, 308 U. S. 355.

In matters of taxation substance rather than form will be regarded, *United States* v. *Phellis*, 257 U. S. 156, and where, as here, wholly controlled corporations of the taxpayer are used by it as mere agencies for the purpose of concealing the real nature of its transactions, such "fictional corporate camouflage cannot be made the device to escape taxation", *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898. This Board and the courts have, in looking only to the substance of the transaction involved, disregarded corporate entities. In *Kaspare Cohn Co., Ltd.*, *supra*, this Board quoted the language of the Supreme Court in *Chicago, M. & St. P. Ry. Co.* v. *Minneapolis Civic & Commerce Association*, 247 U. S. 490, as follows:

Where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose * * * of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company or companies. * * * In such a case the courts will not permit themselves to be blinded or deceived by mere forms of law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require.

and observed that "The rule above quoted is of peculiar importance in tax cases. *Western Maryland Ry. Co.* v. *Commissioner* (C. C. A., 4th Cir.), 33 Fed. (2d) 695." See also, *United States* v. *Lehigh Valley Railroad Co.*, 220 U. S. 257; *Gregory* v. *Helvering*, 293 U. S. 465; *Kaspare Cohn Co., Ltd.*, *supra*, and authorities cited therein. Cf. *Higgins* v. *Smith*, *supra*, where the Supreme Court said:

"A taxpayer is free to adopt such organization for his affairs as he may choose * * *", but "the Government may not be required to acquiesce in

the taxpayer's election of that form for doing business which is most advantageous to him. The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction * * * ".

Of the commissions here in question, $450,000 was turned over to petitioner upon its receipt by Westchester, camouflaged as a loan. The balance of $6,626.50, remaining in the hands of Westchester, its corporate agent, was subject to petitioner's unfettered command. It follows that the entire commissions paid, in the amount of $456,- 626.50, should be included in petitioner's gross income for the fiscal year ended February 29, 1928, and this decides the first issue against petitioner.

Under the second issue, petitioner contends that its return for the fiscal year ended February 29, 1928, was not false and fraudulent with the intent to evade tax, but that the various transfers in evidence, and particularly the assignment to Booth, were made upon the advice of counsel.

The evidence indicates that the various transactions involved were made in pursuance of a plan to conceal the real transaction, which was the receipt by petitioner of the commissions paid by Meyer. Petitioner's failure to include these commissions in its income tax return was but a part of the plan.

It appears that petitioner did have the advice of counsel in making the transfer to Booth, but for what purpose such advice was given is not disclosed. However, petitioner was itself informed as to income tax law and, in fact, on occasions it advised on income tax questions. It may not now hide behind the advice of counsel and be heard to say that its failure to return the commissions as a part of its gross income was due to advice of counsel. Cf. *Charles E. Mitchell*, 32 B. T. A. 1093; affd., *Helvering* v. *Mitchell*, 303 U. S. 391, and *D. C. Clarke*, 22 B. T. A. 314, especially where, as here, the advice is not shown to have been given with reference to the taxability of the commissions involved. *Louis Ginsburg*, 13 B. T. A. 417. This is particularly true where, as here, the facts, taken as a whole, indicate that the taxpayer did not intend to turn square corners in dealing with the Government. It is well settled that there is nothing illegal in an honest effort to reduce taxes to the minimum required by law. Cf. *United States* v. *Isham*, 17 Wall. 496; *Superior Oil Co.* v. *State of Mississippi*, 280 U. S. 390; *Rogers Recreation Co. of Connecticut* v. *Commissioner*, 103 Fed. (2d) 780; *Helvering* v. *Mitchell, supra*, 1129; and in such event the purpose to avoid taxation by the transaction is in itself "legally neutral." *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14; certiorari denied, 296 U. S. 641. But where a taxpayer, under cover of corporate fiction and transfers

to nominees, retains the unfettered control and disposition of its property, it can neither escape the tax on the income therefrom or the obligation to report such income in its tax return. *Helvering* v. *Mitchell, supra;* cf. *Higgins* v. *Smith, supra; Griffiths* v. *Commissioner, supra; Helvering* v. *Gordon,* 87 Fed. (2d) 663; and *Groves* v. *Commissioner,* 99 Fed. (2d) 179.

Obviously, petitioner, having earned commissions in the amount of $456,626.50, did not intend to sell its right and interest therein to Booth for $15,000. Nor did it intend to part with the power to take them at any time. What it obviously did intend was to avoid the necessity of including them in its gross income and thus evade the payment of income tax thereon. To this end it assigned its contract to Westchester for all of Westchester's stock; to this end it camouflaged as a loan the $450,000 turned over to it by Westchester; to this end it treated as bona fide the assignment to Booth and included in gross income the $15,000 it furnished Booth with which to "buy" all its right, title, and interest in the contract; and to this end it failed to include the commissions in its gross income for the taxable year, knowing that it had actually received $450,000 of the commissions and that the balance of $6,626.50 was always subject to its unfettered command and disposition.

On the second issue we hold that respondent has sustained his burden of proof and that the petitioner filed a false and fraudulent return with intent to evade tax for the taxable year ending February 29, 1928. In this situation the assessment and collection of the tax is not barred by the statute of limitations. Inasmuch as part of the deficiency is due to fraud with intent to evade tax, the imposition of the 50 percent penalty is sustained.

The determination of the respondent is approved. However, in computing the deficiency under Rule 50, credit should be allowed for any tax paid on the $15,000 purported to have been received from Booth and included in petitioner's gross income in its return.

Reviewed by the Board.

*Decision will be entered under Rule 50.*