## MEAD CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7019.

Circuit Court of Appeals, Third Circuit.

Nov. 29, 1940.

Edward G. Ince and Robert McDougal, Jr., both of Chicago, Ill., and Theo. W. Brazeau, of Wisconsin Rapids, Wis., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, CLARK, and JONES, Circuit Judges.

JONES, Circuit Judge.

The pending petition brings on for review a decision of the Board of Tax Appeals determining a deficiency in tax against the petitioner corporation for the year 1931 in the amount of the additional tax authorized by Sec. 104(a) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts, page 375. The tax there prescribed is 50% of the net income of "any corporation * * * formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed". This tax is in addition to the regular income tax to which corporations in general are subject and is levied upon the offending corporation's taxable net income as augmented in the manner provided by Sec. 104(c).

In the present case, the petitioning corporation's sole shareholder was another corporation which, as such, was not subject to surtax (Sec. 12, Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, page 352). However, the Board of Tax Appeals found that the petitioner was formed or availed of for the purpose of preventing the imposition of the surtax upon the individual owners of the stock of the parent corporation which owned the entire capital stock of the petitioner. Thereupon the Board concluded, as a matter of law, that the individual shareholders of the parent or holding corporation were the shareholders of the subsidiary (the petitioner) within the intent and meaning of Sec. 104(a) of the act and that, accordingly, the petitioner was liable for the additional tax. The Board of Tax Appeals rested its decision squarely upon its construction of the statute, holding that the term "its shareholders" as used in Sec. 104(a) is sufficiently broad to include, in the case of a subsidiary

corporation, the stockholders of the parent or holding corporation. The opinion of the Board (a bare majority joining in the decision) was undoubtedly provoked by the elaborate scheme adopted and carried out by the parties interested in the petitioner in an obvious effort to minimize their own liability for income taxes as the facts disclose.

Prior to 1931, George W. Mead, his wife and their three children owned or controlled a majority of the issued and outstanding common stock of the Consolidated Water Power & Paper Company, a Wisconsin corporation. In that year, pursuant to a plan devised by Mead's lawyers and tax consultants, he caused three Delaware corporations to be formed, viz., the G. W. Mead Securities Corporation, the S. W. E. Corporation and the Mead Corporation (the petitioner). A variety of transfers ultimately found Mead, his wife and their children the owners of all of the common and preferred stock of the Securities Corporation (Mead and his wife holding the common and their children the preferred), the Securities Corporation the owner of the entire capital stock of the Mead Corporation, and the Mead Corporation the owner of so much of the Consolidated Water Power & Paper Company stock as the Meads had actually owned outright. The S. W. E. Corporation, having served its purpose in the course of the transfers and being no longer useful, was dissolved.

In addition to the Power Company stock which Mead had owned outright, he had purchased, under a contract of January 3, 1927, from one Witter, his brother-in-law, a large block of Power Company stock. This stock, together with the Meads', constituted control of the Power Company. Under the contract of purchase, Mead had given Witter his interest-bearing notes payable serially over a period of ten years. The Witter stock, which was transferred to Mead at the time of his purchase, was delivered to Witter as collateral security for Mead's purchase-money notes. At that time Mead had indicated his desire to form a corporation to hold all of the Meads' Power Company stock and Witter assented. However, nothing definite was done to that end until 1931 when the matters hereinabove referred to were undertaken.

The Mead Corporation on the day following its acquisition of the Power Company stock, which the Meads had owned outright, assumed Mead's obligation to Witter under the contract of purchase and took title to the unreleased Witter stock. New certificates for the stock were issued to the Mead Corporation and delivered by it to Witter as collateral security for the payment of the balance due on Mead's notes. Witter did not, however, release Mead from his personal liability on the notes.

After the completion of the incorporations and the transfers and assignment to which we have referred, Mead became president, treasurer and a director of both the Mead Corporation and the Securities Corporation, his two sons becoming the other officers and directors of both corporations. Neither corporation conducted any business. The activities of the Mead Corporation (except for a bank stock investment in relief of a personal undertaking of Mead) consisted of its receipt of dividends on the Power Company stock, payment of interest and principal on account of the obligations for the Witter stock, payment of dividends to its sole stockholder, the Securities Corporation, and the payment of the expenses incident to the creation and organization of the three Delaware corporations and the effectuation of the plan of transfers. The Securities Corporation's sole activity was its receipt of dividends from the Mead Corporation and its payment of dividends on its own stock to the holders thereof, the members of the Mead family. Mead's ascribed purpose for the roundabout transfer of the Power Company stock was that the Meads' entire holdings of Power Company stock might be placed in one control and that the transfers might be consummated under the reorganization provisions of the Revenue Act of 1928, Sec. 112, 26 U.S.C. A. Int.Rev.Acts, page 377, so as not to determine a taxable gain to the Meads by reason thereof. However, the further use of both the Securities Corporation and the petitioner for the continued holding and control of the Power Company stock did serve to reduce very considerably the liability of Mead and his wife for taxes on ordinary income. The effect on the income tax liability of the Mead children was negligible.

■ The Board of Tax Appeals found that "The petitioner was formed and availed of for the purpose of avoiding the imposition of surtax upon members of the Mead family, particularly George W. Mead

and his wife, Ruth W. Mead". As that finding is supported by substantial evidence, it may not now be disturbed. Helvering v. National Grocery Co., 304 U.S. 282, 58 S.Ct. 932, 82 L.Ed. 1346. Nor would we be disposed to find otherwise were it within our power to do so. Whatever other motives Mead may have had in forming the holding companies to retain and exercise the Mead family's former ownership and control of the Power Company stock, his desire to reduce his own and his wife's liability for income tax was uppermost. Nevertheless, the question presented by the record in this case is not whether the Meads should be subjected to additional taxes as being the substantial owners of the Power Company stock and, as such, accountable for the income therefrom whether distributed to them or not. The respondent made no claim that the ostensible reorganization was a mere device to relieve the Meads of tax liability or that they are still the substantial owners of the Power Company stock, wherefore the entities of both the petitioner and the Securities Corporation should be disregarded. The question here is simply whether the petitioner is subject to the additional tax prescribed by Sec. 104(a).

▅ The statute, by its terms, lays the tax upon a corporation which prevents, in the manner denounced by the act, the imposition of the surtax upon "its shareholders". The words are plain and it is from them that the intent of Congress is to be derived. United States v. Standard Brewery, 251 U.S. 210, 217, 40 S.Ct. 139, 64 L.Ed. 229; Adams Express Co. v. Commonwealth of Kentucky, 238 U.S. 190, 199, 35 S.Ct. 824, 59 L.Ed. 1267, Ann.Cas. 1915D, 1167; Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 87, 15 S.Ct. 508, 39 L.Ed. 601. Shareholders of a corporation, in the usual and ordinary acceptation of the term, are the holders of its stock as the record owners thereof. Treasury Regulation 74, Art. 543, interpreting Sec. 104 of the Revenue Act of 1928, so recognizes.[1] The possessive pronoun "its" which, in Sec. 104(a), limits and thus identifies the "shareholders" whose freedom from surtax the corporation shall not serve except

it be penalized, refers to the corporation made subject to the tax. It is the taxpayer corporation which is forbidden to accumulate *its* "gains and profits" for the purpose of preventing the imposition of the surtax upon *its* shareholders. However, in the present case, no amount of accumulation of gains and profits or failure to distribute surplus would relieve the petitioner's sole stockholder of liability for surtax. That shareholder, being a corporation, was not subject to surtax. Revenue Act of 1928, Sec. 12. Hence the statute, by its terms, does not apply to the facts of the instant case. To say that the term "its shareholders" means not only the corporation's actual shareholders but also the shareholders of its shareholders would be to add to the statute something that is not there and to give it an effect which its plain words do not compel. This we may not do. "To supply omissions transcends the judicial function." Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 250, 70 L.Ed. 566; Smietanka v. First Trust & Savings Bank, 257 U.S. 602, 607, 42 S.Ct. 223, 66 L.Ed. 391. Any extension or retraction of the policy expressed by a statute is for the Legislature and not for the courts. La Belle Iron Works v. United States, 256 U.S. 377, 393, 41 S.Ct. 528, 65 L.Ed. 998; Brushaber v. Union Pacific R. Co., 240 U.S. 1, 25, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713; Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 58 L.Ed. 596; Cook v. Tait, D.C., 286 F. 409, 414, affirmed 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895.

▅ Even though the Meads should have been required to pay a surtax on the basis that the income from the Power Company stock was really theirs, we would not be warranted in extending the terms of a simple statute in order that they might now be reached indirectly. No matter how desirable an extension of the congressional intent may appear to be, it is our duty to observe the limits fixed by Congress and to act accordingly. Commissioner of Immigration v. Gottlieb, 265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031. When the legislative intent has been ex-

---

[1] "The Commissioner, or any collector upon direction from the Commissioner, may require any corporation to furnish a statement of its accumulated gains and profits, the name and address of, and number of shares held by, each of its shareholders, and the amounts that would be payable to each, if the income of the corporation were distributed."

pressed in plain and unambiguous words, it is the duty of the courts to apply and enforce a statute as written. There is then no room for construction. Yerke v. United States, 173 U.S. 439, 442, 19 S.Ct. 441, 43 L.Ed. 760; Lake County v. Rollins, 130 U.S. 662, 670, 9 S.Ct. 651, 32 L.Ed. 1060. Resort to rules of construction is permissible only where there is doubt or ambiguity in the statutory expression. Russell Motor Co. v. United States, 261 U.S. 514, 519, 43 S.Ct. 428, 67 L.Ed. 778; Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B, 1168. Here, there was neither.

■ Yet, the majority of the Board of Tax Appeals imputed ambiguity to the words "its shareholders" and then construed the term as embracing the shareholders of the parent corporation. But even if the doubt, which the Board thus raised, actually existed, a tax statute is not to be extended by implication or enlarged by construction so as to embrace matters not specifically pointed out therein. Crooks v. Harrelson, 282 U.S. 55, 61, 51 S.Ct. 49, 75 L.Ed. 156; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 367, 51 S.Ct. 150, 75 L.Ed. 383; United States v. Merriam, 263 U.S. 179, 188, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547; Van Camp & Sons Co. v. American Can Co., 278 U.S. 245, 253, 49 S.Ct. 112, 73 L.Ed. 311, 60 A. L.R. 1060; United States v. Field, 255 U. S. 257, 262, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461; Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 62 L.Ed. 211.

■ Moreover, Sec. 104(a) is penal. Although the provision is a remedial sanction to be applied civilly (Helvering v. Mitchell, 303 U.S. 391, 402, 58 S.Ct. 630, 82 L.Ed. 917), its penal nature was, none the less, noted in Helvering v. National Grocery Co., supra, 304 U.S. at page 288, 58 S.Ct. 932, 82 L.Ed. 1346. In United Business Corp. of America v. Commissioner, 19 B.T.A. 809, 826, affirmed 2 Cir., 62 F.2d 754, certiorari denied 290 U.S. 635, 54 S.Ct. 53, 78 L.Ed. 552, the Board of Tax Appeals said with respect to a similar provision in the Revenue Act of 1921, Sec. 220, 42 Stat. 247, where the tax was half that of Sec. 104(a) in the 1928 Act, that the section was "highly penal". And in Charleston Lumber Co. v. United States, D.C., 20 F.Supp. 83, 87, the court, in passing upon a similar provision in the Revenue Act of 1924, Sec. 220, 26 U.S.C.A. Int. Rev.Acts, page 31, said that the statute imposed a tax "which is in effect a penalty" and, therefore, "should be strictly construed and should not be extended to cover cases which do not fall within its letter". The respondent answers that a strict construction does not require that the legislative intent be violated. As much may readily be conceded. But, that does not authorize any and all constructions that might possibly be made. To so permit would be to use the rule, as the respondent seeks to do, not to construe but to reconstruct the statute by bringing within it matter which its plain and understandable words do not embrace. When the use of rules of construction is indicated, they should be used to resolve doubt and not to confuse what is plain. Russell Motor Co. v. United States, supra, 261 U.S. at page 519, 43 S.Ct. 428, 67 L.Ed. 778.

■ A still further provision of Sec. 104 confirms that the shareholders contemplated by subsection (a) are the actual shareholders of the taxpayer corporation. Subsection (d) provides that "The tax imposed by this section shall not apply if all the shareholders of *the* corporation include (at the time of filing their returns) in their gross income their entire distributive shares, whether distributed or not, of the net income of *the* corporation for such year. * * * Any subsequent distribution made by the corporation out of the earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his distributive share, be exempt from tax in the amount of the share so included". (Emphasis supplied.) It will hardly be contended that the Meads as the stockholders of the Securities Corporation could have returned as income to them the undistributed gains and profits of the Mead Corporation and then have taken credit in subsequent years against distributions to them by the Securities Corporation for what they had returned as their shares in the accumulated and undistributed profits of Mead Corporation. They would have been held to the reality of the several corporations which they had caused to be created. Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Higgins, Collector, v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed.

406.[2] The established separate entities of the Securities Corporation and the Mead Corporation would have prevented the Meads from returning in their gross income distributive interests in the net income of a corporation of which they were not shareholders. Consequently, if the construction which the Board of Tax Appeals placed upon Sec. 104(a) were to be adopted, relief to the subject corporation by the voluntary action of its stockholders, as permitted by Sec. 104(d), would not be possible. And, if the Meads were not the petitioner's shareholders for the purpose of affording it relief from the penalty, then, by what mutation do they become its shareholders for the purpose of inflicting the penalty?

What the Board of Tax Appeals held, and what the Commissioner contends for, has since become the law prospectively. But it required a specific amendment to accomplish that result. Thus, Sec. 102 of the Revenue Act of 1934, 48 Stat. 680, c. 277, 26 U.S.C.A. Int.Rev.Acts, page 690, lays the additional tax upon a corporation "formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation", etc. The inclusion, by this amendment, of the phrase *"the shareholders of any other corporation"*, confirms what had otherwise clearly appeared, namely, that the term "its shareholders" in the earlier act embraced only the actual shareholders of the subject corporation.

■ The Commissioner argues that the 1934 amendment was merely to clarify existing law. But it did more than clarify. It supplied an omission in the earlier act, and Congress so understood. The report of the Ways and Means Committee of the House accompanying H.R. 7835 (1934 Revenue Bill) pointed out the change to be effected by Sec. 102 of the 1934 Act by stating that the "tax is applicable whether the corporation is used to prevent the imposition of the surtax upon its own shareholders or upon the shareholders of

any other corporation, for example, the shareholders of a parent corporation". House Report No. 704, 73rd Congress 2d Session, p. 12. There was then no suggestion that what the amendment provided had been the law under the earlier act and that it was designed merely to remove doubt. The existing law had been clear enough. What was needed to effect the end ultimately desired by Congress was an enlargement which the 1934 amendment supplied by making "specific provision for the casus omissus in the earlier act". Smietanka v. First Trust & Savings Bank, supra, 257 U.S. page 607, 42 S.Ct. page 224, 66 L.Ed. 391. By the amendment, Congress for the first time included "the shareholders of any other corporation" among those whom a corporation might not save from the imposition of the surtax by permitting its gains and profits to accumulate except upon penalty of its becoming subject to the tax prescribed. The effect of the amendment was to work a change in the prior law. United States v. Field, 255 U.S. 257, 264, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461; Spring City Foundry Co. v. Commissioner, 292 U. S. 182, 187, 54 S.Ct. 644, 78 L.Ed. 1200.

■ The many re-enactments [3] by Congress, prior to the 1934 amendment, of substantially the same provision as that contained in Sec. 104(a) of the Revenue Act of 1928, in the light of the long continued and unvarying course of executive administration under the earlier acts, sustains the conclusion, independently apparent, that the term "its shareholders" included only such as were the actual shareholders of the subject corporation. Throughout the Treasury regulations applicable to the Revenue Acts of 1921, 1924, 1926, 1928 and 1932 (in each of which substantially the same statutory provision appeared) there was no suggestion that the shareholders, whose relief from surtax by the corporate design which those acts interdicted, were other than the actual shareholders of the taxpayer corporation. In marked contrast, however, fol-

---

[2] See, also, New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 442, 54 S.Ct. 788, 78 L.Ed. 1348; Dalton v. Bowers, 287 U.S. 404, 409, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397; Klein v. Board of Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140, 73 A.L.R. 679.

[3] Sec. 220 of the Revenue Act of 1921, 42 Stat. 247; Sec. 220 of the Revenue Act of 1924, 26 U.S.C.A.Int.Rev.Acts, page 31; Sec. 220 of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 176; Sec. 104 of the Revenue Act of 1928, 26 U.S.C.A.Int.Rev.Acts, page 375; and Sec. 104 of the Revenue Act of 1932, 26 U.S.C.A.Int.Rev.Acts, page 508.

lowing the amendment by the Revenue Act of 1934 (Sec. 102), Treasury Regulation 86, promulgated under that statute, interpreted the amended provision as including within its purview a corporation formed or availed of for the purpose of preventing the imposition of the surtax upon the shareholders of another corporation. This change in interpretation was obviously because of the 1934 amendment (Sec. 102). Plainly, the theretofore well-established administrative interpretation, as reflected in the Treasury regulations under Revenue Acts prior to 1934, and the recurrent action by Congress in its re-enactments of the same statutory provision without material change, implied congressional approval of the interpretation which limited the term "its shareholders" in the earlier statutes to the actual shareholders of the corporate taxpayer. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Old Mission Portland-Cement Co. v. Helvering, 293 U.S. 289, 293, 294, 55 S.Ct. 158, 79 L.Ed. 367; United States v. Dakota-Montana Oil Co., 288 U.S. 459, 466, 53 S.Ct. 435, 77 L.Ed. 893. See Hassett v. Welch, 303 U.S. 303, 312, 58 S.Ct. 559, 82 L.Ed. 858, where the rule of implied congressional approval was applied in construing a 1932 re-enactment of a 1931 statute, only one Treasury ruling thereon having been issued in the meantime. Of course, the rule does not operate to freeze a meaning which is in evident conflict with the clearly expressed legislative intent. Helvering v. Hallock, 309 U.S. 106, 119-121, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. But where a statute is susceptible of the meaning placed upon it by Treasury ruling and Congress thereafter re-enacts the provision without substantial change, such action is to some extent confirmatory that the ruling carries out the congressional purpose.

■ The respondent further contends that the entity of the Securities Corporation may be disregarded and that, thereby, the Meads as the shareholders of the ignored corporate entity automatically become the shareholders of the petitioner. The argument was urged especially upon the Board of Tax Appeals, yet the Board deliberately declined to so hold. The reason is apparent. The same justification and necessity for disregarding the entity of Securities Corporation would require that the entity of the petitioner be likewise disregarded. Both corporations were equally integral parts of the same plan.

But the Commissioner finds it necessary to affirm the separate entity of the petitioner. The very provision of the act, which he invokes in order to impose the penalty tax upon the petitioner, presupposes an existing corporation upon which the tax can be imposed. The fact that, in an appropriate action, the entities of both corporations might justifiably have been disregarded is of no present avail to the respondent. That is not this case. The Commissioner seeks, rather, to affirm arbitrarily the reality of the one corporation and to deny that of the other, for which he shows no consistent impulse. Nor is the motive of the Meads in organizing the corporations any more material in the one instance than it is in the other. Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Superior Oil Co. v. Mississippi, 280 U.S. 390, 395, 396, 50 S.Ct. 169, 74 L.Ed. 504; Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214, 217.

■ What effect the Meads' apparent efforts to avoid income taxes would have had upon a question of their own liability for tax is not before us. We need not, therefore, further distinguish the cases cited by the respondent where a statutory liability has been enforced against individuals although the ownership, by reason of which the liability attaches, was in another entity. Had an additional assessment for tax been lodged against the Meads personally upon the theory of their responsibility to return, as their own, the income from the Power Company stock of which the petitioner was the record owner, a far different question would have been presented. Where tax avoidance is the aim, the transparency of corporate forms dissolves in the actuality of the real ownership and control of property. Griffiths v. Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Higgins, Collector, v. Smith, supra. But the Commissioner did not choose to make a direct attack on both corporate entities by assessing the Meads and, as an alternative, now asks us to adopt one of two equally impossible courses, namely, either to extend the statute, penal in its nature, beyond the clear import of its plain terms or, by looking through the entity of two interlocking corporations, to recognize the existence of the one and deny that of the other.

As stated at the outset, the question here is whether the petitioning corpora-

tion is subject to the tax imposed by Sec. 104(a) of the Revenue Act of 1928. A negative answer is the logical result of the respondent's failure to show that the petitioner was availed of for the purpose of preventing the imposition of the surtax upon "its shareholders". Without the Meads as the shareholders of the petitioner, the basis for the legal conclusion drawn by the Board of Tax Appeals necessarily falls.

The decision of the Board of Tax Appeals is reversed.

BIGGS, Circuit Judge (dissenting).

I must respectfully dissent from the decision expressed by the majority of this court which depends upon a literal interpretation of the phrase "its stockholders" contained in Section 104(a) of the Revenue Act of 1928.

The taxpayer, Mead Corporation, owns the revenue-producing stocks of certain power companies. Its stock is owned by the G. W. Mead Securities Corporation, and the Mead family in turn owns all of the stock of the Securities Corporation. The record convinces me as it convinced the Board and the majority of the court that the taxpayer was formed for the purpose of escaping the imposition of surtaxes for the year 1931 upon incomes of the individuals comprising the Mead family. The provisions of the statute would apply precisely to the taxpayer had not the corporate entity of the Securities Corporation been interposed by the Meads between themselves and their corporate pocketbook. The majority of the court concludes that since the Securities Corporation is the taxpayer's stockholder, the Meads are not, and therefore the Commissioner cannot put the taxpayer within the box of the statute despite the fact that the Securities Corporation is. merely a company which serves as an agent for and as a conduit to the Meads for the collection and payment of dividends declared by the taxpayer.

It has long been the law that the key to the proper interpretation of an act of Congress, is to be found in the congressional policy and purpose. Mercantile National Bank v. New York, 121 U.S. 138, 154, 7 S.Ct. 826, 30 L.Ed. 895; Helvering v. Stockholms Enskilda Bank, 293 U. S. 84, 55 S.Ct. 50, 79 L.Ed. 211. An examination of Section 104 makes it plain that it was the intention of Congress to tax a corporation used to accumulate gains and profits. The phrase "its stockholders" was meant to designate the persons who were really the owners of those gains and profits. In the case at bar those persons are the Meads. Though they have dropped into the picture a corporate entity designed to insulate the Mead Corporation from themselves they cannot defeat the congressional purpose thereby. The reality remains that the individuals used the taxpayer for the accumulation of gains and profits and the Securities Corporation for the control of that accumulation. For this reason the Mead Corporation incurs the tax.

In conclusion I must state that I do not attach to the amendment of Section 102 of the Revenue Act of 1934 the importance that my colleagues do. I think that the amendment was by way of clarification of the existing law.

In my opinion the decision of the Board of Tax Appeals should be affirmed.