OPINION. Black, Judge: The question in these proceedings is whether the stipulated gain here involved is to be taken into account in computing net income at the percentage (100 percent) mentioned in section 115 of the Revenue Act of 1934, as the respondent contends, or at the percentages mentioned in section 117 of the same act, as petitioners contend. The material provisions of these sections are in the margin.[3] The answer to the question depends upon whether the second preference stockholders of the Corning Glass Works in substance transferred their stock to the Corning Glass Works in consideration for “amounts distributed in partial liquidation” of that corporation, or whether in any event the disposition by the stockholders of their stock must be regarded as a “sale” of a capital asset.. Petitioners primarily contend that the stockholders made a bona fide unrestricted sale of their stock to Chas. D. Barney & Co.; that section 115 would have no application because the stockholders received nothing from the Corning Glass Works; that the stockholders’ dealings were with Chas. D. Barney & Co. (through their agent, the First National Bank) in a separate and completed transaction; that their entire consideration for the stock disposed of came from Chas. D. Barney & Co. as consideration for the sale of a capital asset; and that section 117 (a) controls as to the percentage of gain to be taken into account. In support of this primary contention petitioners cite John D. McKee et al., Trustees, 35 B. T. A. 239, and Estate of Emanuel Ulman, 46 B. T. A. 517 (on review to the Fifth Circuit). The respondent contends that the sale to Chas. D. Barney & Co. was an artificial, unessential, transitory phase of a completed tax avoidance scheme which should be disregarded in the determination of the tax liabilities herein, and that in substance the. proceedings present a partial liquidation as defined in section 115 (i), supra. In support of these contentions the respondent cites Griffiths v. Helvering, 308 U. S. 355; Higgins v. Smith, 308 U. S. 473; Groves v. Commissioner, 99 Fed. (2d) 179; Electrical Securities Corporations. Commissioner, 92 Fed. (2d) 593; Ahles Realty Corporations. Commissioner, 77 Fed. (2d) 150: Shoenberg v. Commissioner, 77 Fed. (2d) 446; Commissioners. Ashland Oil & Refining Co., 99 Fed. (2d) 588; Helvering v. Bashford, 302 U. S. 454; Helvering v. Alabama Asphaltic Limestone Co., 315 U. S. 179; Morsman v. Commissioner, 90 Fed. (2d) 18; Commissioner v. Dyer, 74 Fed. (2d) 685; Helvering v. F. & R. Lazarus & Co., 308 U. S. 252; Helvering v. Horst, 311 U. S. 112; James D. Robinson, 27 B. T. A. 1018; affd., 69 Fed. (2d) 972; J. Natwick, 36 B. T. A. 866; and W. & K. Holding Corporation, 38 B. T. A. 830. As an alternative, petitioners contend that if the sale to Chas. D. Barney & Co. should for any reason be disregarded and the disposition by the stockholders of their second preference stock be regarded in substance as a transfer to the Corning Glass Works, then the transaction must nevertheless be regarded as a sale of capital asset to the Corning Glass Works and still be controlled by section 117 (a) on the alleged ground (disputed by the respondent) that the Corning Glass Works did not cancel or redeem the 10,000 shares in question but as a matter of law held them as treasury stock. In support of this alternative contention petitioners rely upon William A. Smith, 38 B. T. A. 317, and Ernest Alpers, 126 Fed. (2d) 58. We agree with petitioners’ primary contention. It has been said many times by the courts that if a method to minimize taxes is carried out by legal means and is bona fide and not a mere sham, it is not subject to censure. United States v. Isham, 17 Wall. (84 U. S.) 496; Bullen v. State of Wisconsin, 240 U. S. 625; Iowa Bridge Co. v. Commissioner, 39 Fed. (2d) 777; John D. McKee et al., Trustees, supra; John Sherwin, 46 B. T. A. 330; and Commissioner v. Gilmore, 130 Fed. (2d) 791. In Gregory v. Helvering, 293 U. S. 465, the Supreme Court in the course of its opinion said: * * * The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot he doubted. United States v. Isham, 17 Wall. 496, 506: Superior Oil Co. v. Mississippi, 280 U. S. 390, 395, 396; Jones v. Helvering, 63 App. D. C. 204, 71 F. (2d) 214, 217. The law certainly permitted the stockholders of the Corning Glass Works to sell their 10,000 shares of second preference stock to Chas. D. Barney & Co., which they did through their agent, the First National Bank. There was nothing illegal in such a transaction. Where, however, such a sale is' made for the known purpose of assuring the sellers of the benefit of the capital gains provisions of section 117 (a), supra, rather than risk the possibility of having 100 percent of the gains taxed as a distribution in partial liquidation under section 115 (c), supra, it is perfectly proper for the taxing authority to scrutinize the transaction closely for the purpose of determining whether there was a bona fide unrestricted sale in fact, with no commitments of any kind such as a binding side agreement to immediately resell the stock to the issuing corporation at a fixed price. But when this is done and the evidentiary facts clearly show, as they do in the instant proceedings, that the sale is bona fide, that it was unrestricted, that the purchaser is bound by no commitments and is free to do with the property purchased whatever the purchaser desires, then the taxing authority must recognize the transaction for what it is. Cf. Estate of Emanuel Ulman, supra. The respondent in his brief emphasizes the evidentiary facts that before Chas. D. Barney & Co. purchased the 10,000 shares at 1001/2 it knew it could resell them to the Guaranty Trust Co. (agent for the Coming Glass Works) at 101; that Hanes, the senior partner of Chas. D. Barney & Co., told Coechlein, another member of the firm of Chas. D. Barney & Co., to purchase the 10,000 shares at not more than 100% and then to sell the stock to the Guaranty Trust Co. at 101. We do not regard these evidentiary facts as detrimental to petitioners’ primary contention. Chas. D. Barney & Co. had not agreed with anyone to resell to the Guaranty Trust Co. It was acting for its own account and after it had purchased the 10,000 shares it was free to do whatever it pleased with them. The fact that it did, on the same day that it purchased them, resell them to the Guaranty Trust Co., acting for the Corning Glass Works, has no bearing on the tax consequences of the sale by the second preference stockholders of the Corning Glass Works. That sale was one separate, independent, and completed transaction and the sale by Chas. D. Barney & Co. to the Guaranty Trust Co. was another wholly separate, independent, and completed transaction, and each transaction has its own tax consequences. See Gus T. Dodd, 46 B. T. A. 7; affd., 131 Fed. (2d) 382; Estate of Emanuel Ulman, supra; and George C. Woodruff, 46 B. T. A. 727; affd., 131 Fed. (2d) 429, in which the Commissioner took the opposite position as to separate tax consequences from that which he takes here and in which we sustained him. The respondent’s argument in this proceeding seems largely based upon the fact that petitioners could have turned in their 10,000 shares of second preference stock to the Corning Glass Works for cash and thus have been taxed 100 percent on the gains, rather than to have sold the stock to an outside party and be taxed on the percentages of capital gains as provided by law, and that, because they did not do it that way, they should nevertheless be taxed as if they had done it that way. This seems to be in essence the same sort of an argument that the Commissioner used to support his position in Commissioner v. Gilmore, sufra. The court in that case took notice of the argument in the following language: * * * The result to be reached through this merger, it is said, could have been reached more directly by an out and out liquidation which, of course, would have been taxable under § 115 (c). * * * We think this gets down to the proposition that if there are two ways of accomplishing a legitimate business result, one of which clearly creates a taxable transaction, one is equally subject to tax liability if he chooses the other unless there is an adequate business reason for the particular method used. We do not think this is the rule of the statute, the Regulations, nor, as we read them, the decisions. The cases cited by the appellant do not extend the Gregory doctrine this far. * * * We agree with petitioners that John D. McKee et al., Trustees, supra, squarely supports their position. The petitioners in that case, on January 31, 1931, as trustees, were and for more than two years had been the owners of bonds which matured on February 1, 1931. They knew that the bonds were to be redeemed at par at maturity. To insure the taxability of the resulting gain under section 101 of the Revenue Act of 1928 (similar to section 117, supra) the petitioners on Saturday, January 31,1931, sold the bonds at par to an affiliate of the American Trust Co., which as trustee called the entire issue of such bonds for redemption for Monday, February 2, 1931. In that case the Commissioner contended that the gains realized by petitioners should be taxed as ordinary gains; that the petitioners there were not entitled to the benefit of the capital net gain section of the statute because they did not make actual sales in good faith to the affiliate and because the transactions were not normal business transactions even if they were actual sales and made in good faith; and that essentially the transactions were not sales but redemptions.[4] We held that'there was no merit in any of those contentions and that petitioners were entitled to have the profits realized on the sales taxed under section 101 (a) of the Revenue Act of 1928. The McKee case was acquiesced in by the Commissioner (Cumulative Bulletin 1937-1, pp. 10, 15) and was cited with approval in Frances M. Averill, 37 B. T. A. 485, 493; reversed on other issues, 101 Fed. (2d) 644, and in Isaac W. Frank Trust of 1927, 44 B. T. A. 934, 940 (on review to Third Circuit). In his reply brief the respondent, in criticising the McKee case, says it was decided without the benefit of the subsequent pronouncements of the United States Supreme Court in such cases as Helvering v. F. & R. Lazarus & Co.; Griffiths v. Helvering; Higgins v. Smith; and Helvering v. Horst, all supra. These decisions in our opinion do not impair in the slightest degree the correctness of the principles applied in the McKee case. In the F. & R. Lazarus & Co. case the taxpayer was claiming depreciation on three buildings used in its business. The Commissioner had disallowed the deduction on the ground that in a prior year the taxpayer had conveyed the legal title in the buildings to another. In 32 B. T. A. 633, the Board of Tax Appeals held that the conveyance in the prior year, while in written form was a transfer of ownership with a lease back, in substance was a loan secured by the property involved. We allowed the deduction and were affirmed by the Sixth Circuit and by the Supreme Court. The entity that was disregarded in the Griffiths case was a corporation wholly owned by Griffiths. In the instant proceedings neither the petitioners nor the Corning Glass Works had any control of or interest in Chas. D. Barney & Co., the transaction with which the respondent seeks to disregard. In Higgins v. Smith, supra, a sale to a wholly owned corporation was disregarded on the ground that, although title passed to the corporation, the taxpayer-stockholder “retained the control.” In the instant proceedings the sale was to an outsider. Both title .and control of the 10,000 shares passed to this outsider with no strings attached. In the Horst case, the Supreme Court held that a gift during the donor’s taxable year of interest coupons detached from the bonds, delivered to the donee, and later in the year paid at maturity, was realization of income taxable to the donor. No such question is involved in the instant proceedings. Neither do the facts in the remaining cases cited by the respondent even remotely resemble the facts in the instant proceedings. Groves v. Commissioner had to do with the creation of a corporation for the purpose of diverting to it the income of the taxpayer. Electrical Securities Corporation v. Commissioner, Ahles Realty Corporation v. Commissioner, Commissioner v. Ashland Oil & Refining Co., Helvering v. Bashford, and Helvering v. Alabama Asphaltic Limestone Co. are all reorganization cases involving the creation of a temporary corporation formed and used for the sole purpose of avoiding a tax or else the determination of the question whether a reorganization took place. Morsman v. Commissioner had to do with the legal effect of the attempted creation of a trust in which the taxpayer was settlor, sole trustee, and life beneficiary. Commissioner v. Dyer involved the question whether there was on the sale a contract to repurchase the stock sold. In Shoenberg v. Commissioner, a corporation over which the taxpayer had complete domination was held his agent in certain stock transactions. The three remaining cases cited by the respondent, James D. Robinson, J. Natwick, and W. & K. Holding Corporation, are cited in connection with petitioners’ alternative contention. Since we agree with petitioners’ primary contention, it becomes unnecessary to consider the alternative contention or to make ultimate findings in that regard. The view we take in these proceedings is that the second preference stockholders here involved sold their 10,000 shares to Chas. D. Barney & Co. in a bona fide, unrestricted sale for a cash consideration of $100.50 per share, less $900 for Federal and New York revenue stamps. This was a coibpleted transaction, and, since it was a sale of a capital asset, section 117 (a), supra, should be applied for the purpose of determining the percentage of gain to be taken into account in computing net income. We hold, therefore, that the respondent erred in applying section 115 (c), for the reason that that section has no application to this transaction. John D. McKee, et al., Trustees, supra. Cf. Pauline Ickelheimer, 45 B. T. A. 478; affd., 132 Fed. (2d) 660. Decisions will be entered for petitioners in Docket Nos. 104679, 104680, 104681, 104684, and 104685. Decisions will be entered under Rule 50 in Docket Nos. 104682 and 104683. SEC. 115. distributions BY CORPORATIONS. ******* (c) Distributions in Liquidation. — Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under sectaion 111, bnt shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income. * * * [[Image here]] (i) Definition of Partial Liquidation. — As used in this section the term “amounts distributed in partial liquidation” means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Generad Rule. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income: 100 per centum if the capital asset has been held for not more than 1 year ; 80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years; 60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years; 40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years; 30 per centum if the capital asset has been held for more than 10 years. At that time gains from redemptions were Iield to be taxable as ordinary gains and not as capital gains. John H. Watson, Jr., 27 B. T. A. 463.