**INTERCITY HOSPITAL ASS'N v. SQUIRE, Collector of Internal Revenue.**

No. 555.

District Court, W. D. Washington, S. D.

July 26, 1944.

W. L. Grill, of Seattle, Wash., James P. Callahan, of Hoquiam, Wash., and Jones & Bronson, of Seattle, Wash., for plaintiff.

J. Charles Dennis, U. S. Atty., of Tacoma, Wash., Thomas R. Winter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, of Seattle, Wash., and Harry Sager, Asst. U. S. Atty., of Tacoma, Wash., for defendant.

LEAVY, District Judge.

The issue presented in this case is whether the services performed by the employees of the plaintiff are excepted from the payment of tax liability growing out of the provisions of 26 U.S.C.A. Int.Rev.Code, § 1426(b) (8). The specific question here involved is whether the plaintiff is a corporation organized and operated as a charitable organization with no part of its income inuring to private individuals or private shareholders.

The Court has given very careful consideration to the able and comprehensive briefs submitted on behalf of the plaintiff and the defendant herein, and has examined the various authorities cited. The facts as adduced by the evidence submitted were closely followed, and since the trial there has been furnished to the Court a complete transcript of all the testimony, which has been read and reread, for the purpose of further refreshing the memory of the Court.

It would serve no useful purpose to review extensively the facts nor even the many authorities that have been cited, and I shall, therefore, refrain from doing so.

The period of time herein involved is from November 1 to December 31, 1939, though a decision involving that period of time would necessarily affect and control the situation in reference to tax liability during all times subsequent.

It was contended at the outset by the defendant that the evidence should be limited to the two-month period of time here involved, for which the assessment of tax was made. It soon became apparent that in order to render a decision upon the issue, it was necessary to have some background as to the previous history, as well as information concerning the period of time subsequent to December 31, 1939. Accordingly, much of the evidence in this case deals with those periods, and it does throw light upon that period of time for which the assessment of taxes was made.

The plaintiff corporation was organized as a charitable corporation under the provisions of Remington's Revised Statutes of the State of Washington, § 3863 et seq., and on November 1, 1939, it began operating two hospitals in the County of Grays Harbor, Washington. The facilities provided by these two hospitals constituted and now constitute more than fifty per cent of the hospital facilities in the region served, which has a population of approximately fifty thousand people, largely industrial, engaged in logging, lumbering and closely allied activities.

The two hospitals, before coming under the control and operation of the plaintiff herein, were owned and operated by a private profit corporation known as the Grays Harbor Hospital Association, whose stock was held by six doctors, and these doctors became and now are the trustees of the plaintiff corporation.

The plaintiff, upon assuming business, took over the assets and liabilities of the Grays Harbor Hospital Association, first, by lease agreement, and, finally, on October 1, 1943, by purchase, and thereupon the Grays Harbor Hospital Association proceeded to liquidate its assets.

In a general way, there was no material change in the operation of the business subsequent to the organization of the plaintiff corporation, and both it and its predecessor were controlled and directed by the same individuals, with the possible exception of one person, who had died. Approximately fifty per cent of the business of both plaintiff and its predecessor resulted from medical aid and hospitalization contracts with industrial organizations and individuals. Such contracts covered approximately five thousand workmen and were made directly between the plaintiff corporation, on the one hand, and the employers and employees, on the other.

The facilities of the two hospitals operated by the plaintiff were at all times here involved, and during the time they were under the control and ownership of the plaintiff's predecessor, made available to the general public without regard to race or creed or financial status; all qualified doctors were permitted to bring their patients to the hospitals for care, and an extremely liberal rule prevailed concerning

admittance of patients without funds. This rule was further liberalized when these hospitals were taken over by the plaintiff herein, in that no questions whatever were asked and no statement required of financial standing nor ability to pay immediately or prospectively. The evidence discloses that, when taken into consideration with the gross income of these hospitals, during the two month period here involved, and for the time subsequent thereto, an amount ranging from six to eight per cent of such gross income was donated to charity patients.

Both hospitals at all times here involved and during the time they were operated by the predecessor of the plaintiff were available and open to the general public, without regard to race or creed or financial status, and all qualified doctors were permitted to bring their patients to the hospitals for care, and no one in need of the services of hospital facilities in that region was ever denied admittance, regardless of whether they were covered by a medical aid contract with the hospital or contract with the County Welfare Department.

Briefly, the foregoing are the facts as established in this case:

The Internal Revenue Bureau assessed income tax and social security tax against the plaintiff from the time it commenced operating the hospitals in question. This assessment was contested by the plaintiff on the ground that it was organized as a non-profit, charitable corporation, and was carrying on as such. It was permitted to submit evidence to the Bureau of Internal Revenue upon its claim for exemption, and after a hearing the Bureau denied exemption from social security tax and denied exemption from income tax under the provisions of 26 U.S.C.A. Int. Rev.Code, § 101 (6), which grants exemption to charitable hospitals, but did grant exemption from income tax based upon the provisions of 26 U.S.C.A. Int.Rev.Code, § 101(8), which section relieves from liability payment for income tax civic leagues or organizations not organized for profit, but operated exclusively for the promotion of social welfare, and the net earnings of which are devoted exclusively to charitable purposes.

The Bureau of Internal Revenue rested its conclusion upon the finding that, "in practically every case a charge is made for the services rendered"; further, "neither your articles of incorporation nor by-laws provide for the treatment of charitable patients, and it is apparent from the evidence presented that you have no purpose and made no pretense of bestowing charity."

Neither of the foregoing findings are supported by the evidence, and, clearly, if an exemption at all was allowed to the plaintiff, it could only be allowed under the provisions of Section 101(6), supra, as a charitable hospital, because the plaintiff, by the undisputed facts in this case, does not fall under the provisions of, nor definitions given, in Section 101(8), supra, and if the facts were as found by the Bureau of Internal Revenue, the exemption from income tax should not have been allowed.

From what I have heretofore stated as to the facts, it is clear that the plaintiff is entitled to exemption from income tax under the provisions of Section 101(6), supra, and by virtue of such exemption, it automatically becomes exempt from the payment of social security tax here involved under the provisions of Section 1426 (b) (8), supra. The Act providing for social security tax and the exceptions made therein are in the same language as those covering exemption from income tax for charitable organizations under Section 101(6), supra.

The Virginia Mason Hospital Association of Seattle, Washington, became involved in a controversy as to liability under the compensation statutes of the State of Washington, which controversy was finally determined by the Supreme Court of this State, and reported in Virginia Mason Hospital Ass'n v. Larson, 9 Wash.2d 284, 114 P.2d 976. The facts, as set forth in that opinion, and the reasoning applied by the Supreme Court of this State on the issue as to whether this hospital organization was a charitable organization, are very similar to the facts in the instant case. It was held to be a charitable organization and therefore exempt from the State tax, and it has likewise been exempted from Federal taxes such as are here involved.

The Maynard Hospital, Inc., became involved in a controversy with the Bureau of Internal Revenue concerning liability for social security tax. There the Bureau found it was entitled to exemption as a charitable organization, which finding, however, was not concurred in by the Appeals Council of the Social Security Board. This difference of opinion resulted in a submission of the controversy to the Attorney Gen-

eral, who, on the 2nd day of November, 1943, rendered an opinion, which, in effect, reversed the Appeals Council and sustained the Bureau of Internal Revenue, and which opinion strongly supports the position taken by the plaintiff herein. 40 Op. Atty. Gen. ——.

I mention these two cases because there is a sufficient degree of similarity to consider them as precedents, and I accept them as such.

The contention of the defendant here rests largely upon the fact that there has been no real change of methods and practices in the operation of the hospitals in question by the plaintiff from those of its predecessor, which was a private, profit corporation. The defendant insists further that the sole purpose for bringing into being the plaintiff corporation and chartering it as a charitable, non-profit corporation was to avoid the payment of taxes. The evidence does not support this latter contention. It does support the fact that a continued availability of these hospital facilities, which cared for more than fifty per cent of the needs of the people in that region, could be continued only by being relieved of the tax burdens. It is a fact that relief from liability for taxes was an essential and moving cause for the change in corporate structures.

There is a claim also that the change in corporate structures was for the purpose of permitting the shareholders in the Grays Harbor Hospital Association to realize an excessive value on the stock they held in such Association. This is not supported by the evidence, as it is clearly established that the rental charged during the period here involved and the price ultimately paid for the properties in question were not excessive nor an amount above the fair market value.

The public is and has been benefited by having available two very fine hospitals open to all persons and all doctors under equal conditions, and receiving from such operation a substantial degree of charity work. This would not have been possible if these hospitals were burdened with the taxes assessed against them when they were operated as a private profit corporation. The most that can be said concerning the change in corporate structure is that advantage was taken of existing laws which gave a tax-free status to the operation of the hospitals here involved, and enabled them to meet the needs of the region that they served. It is not unlawful nor repre-

hensible for a corporation to take advantage of laws dealing with the assessment and collection of taxes, when the object and purpose of the enactment of such laws was to encourage such corporate structures where they, in fact, served the public through charitable activities. There is nothing in this record indicating subterfuge, artifice or fraud in bringing about the change from a private profit corporation to a non-profit, charitable one. Jones v. Helvering, 63 App.D.C. 204, 71 F.2d 214; Bullen v. Wisconsin, 240 U.S. 625, 630, 36 S.Ct. 473, 60 L.Ed. 830; Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355; Superior Oil Co. v. Mississippi, 280 U.S. 390, 395, 50 S. Ct. 169, 74 L.Ed. 504.

The facts clearly show that none of the net earnings inure to the benefit of any private individual.

I find the plaintiff is entitled to recover herein. Formal findings of fact and conclusions of law and decree may be submitted upon notice.